UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| _____ ) | | |
| JOHN DOE, by and through his Parent, ) | | |
| JANE DOE, ) | | |
| ) | | |
| Plaintiffs, ) | CIVIL ACTION | |
| ) | NO. 3:11-cv-00291-JBA | |
| v. ) | | |
| ) | | |
| EAST LYME BOARD OF EDUCATION ) | | |
| and the CONNECTICUT STATE ) | | |
| DEPARTMENT OF EDUCATION, ) | | |
| ) | | |
| Defendants. ) | | |
| _____ ) | | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S OBJECTION
TO PLAINTIFFS' SUBMISSION OF ADDITIONAL EVIDENCE**

Plaintiffs John Doe ("John") and Jane Doe ("Ms. Doe") hereby oppose the defendant East

Lyme Board of Education's Objection to Plaintiff's [sic] Supplementation of Record on

Summary Judgment (Docket No. 49, filed February 1, 2012) ("Objection").  In support of their

opposition to the Objection, the Does rely on this memorandum of law and on the Second

Affidavit of Jane Doe, filed herewith.  For the reasons set forth below, the Court should deny the

defendant's objection to the Does' submission of additional evidence in its entirety.  The Court

should also deny any stay beyond the one granted to allow briefing on the Objection.

**FACTUAL AND PROCEDURAL BACKGROUND**

As the First Circuit stated in a leading case, "The starting point for determining what

additional evidence should be received . . . is the record of the administrative proceeding."  *Town

of Burlington v. Department of Educ. of Massachusetts*, 736 F.2d 773, 790 (1st Cir. 1984), *aff'd

on other grounds*, 471 U.S. 359 (1985).  The Does submit the following summary of the relevant

facts for the purposes of this Opposition.  The facts are set forth in greater detail in the Local

Rule 56(a)(1) Statement in Support of Plaintiffs' Motion for Summary Judgment (Docket No.

40) and in the Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment

Statement (Docket No. 39) ("Pl. S.J. Mem.").

This case concerns John's educational programming for the 2009-2010 and 2010-2011

school years, including the summers of 2009 and 2010.[1]  John is a twelve-year-old boy who,

despite his high average to superior intelligence, presents with significant language-based

learning disabilities that interfere with his ability to learn.  These include an expressive language

impairment; a rare disorder involving impairment in the learning and use of syntax; a disorder of

written expression; dysgraphia; and dyslexia.  His dyslexia involves a "double deficit"

phonological processing disorder, meaning that his abilities are significantly depressed in not one

but two of the processes underlying literacy skills: phonological awareness and rapid naming.

These deficits place him at especially high risk with regard to the acquisition and development of

skills such as reading, writing, and spelling.

John also displays social-pragmatic vulnerabilities and anxiety.  He has previously been

diagnosed with autism; pervasive developmental disorder, not otherwise specified; attention

deficit hyperactivity disorder, combined type; and a cognitive disorder, not otherwise specified,

related to deficits in executive functioning.[2]

The parties agree that John is eligible for special education, but disagree as to the

program and placement that he required during the time periods at issue, in order to meet his

---

[1]  Ms. Doe's due process hearing request included a request for relief as to the 2008-2009 school
year as well.  She seeks relief from this Court as to 2008-2009 only as to special education and related
services that the Board agreed in a December 2008 IEP to provide, but unilaterally changed in the
February 2009 amendment of that IEP.  *See* Local Rule 56(a)(1) Statement of Facts ¶ 41.
[2]  For definitions of terms used in this paragraph, including dyslexia, pragmatics, pervasive
developmental disorder, and executive function, see Pl. S.J. Mem., pp. 2-3 & nn. 2-5..

special needs and provide him with a free appropriate public education.  During the 2008-2009 school year (his third-grade year), by agreement between Ms. Doe and the defendant East Lyme Board of Education ("Board"), John attended the Solomon Schechter Academy ("SSA"), a private school in New London, Connecticut, at Ms. Doe's expense and the Board provided John with special education and related services at its expense.  In December 2008, the Board developed an Individualized Education Program ("IEP") that provided John with a total of 9 hours of services per week, including 1:1 reading instruction (5 hours per week) using the Orton-Gillingham approach, and 1:1 speech-language therapy (2.5 hours per week).  Ms. Doe accepted that IEP as well as a subsequent IEP amendment that increased John's speech-language therapy to 3 hours per week.

Independent psycholinguist Robert L. Kemper, Ph.D., CCC-SLP, evaluated John in October 2008 and again in May 2009.  In the latter evaluation, Dr. Kemper recommended that, for the 2009-2010 school year, John remain at SSA and continue to receive specialized services, consisting of 2 hours per day (10 hours per week) of 1:1 speech and language services, and 3 hours per week of 1:1 Orton-Gillingham reading instruction.

On June 17, 2009, the Board convened a planning and placement team ("PPT") to review John's program and Dr. Kemper's evaluation, and to develop John's IEP for 2009-2010 (fourth grade).  The Board refused to provide the program recommended by Dr. Kemper, and in fact did not propose any program at all at the PPT meeting.  In later meetings with administrators (which were not PPT meetings), Ms. Doe learned that the Board was proposing to return John to public school for the 2009-2010 school year, where he would be placed in large regular education classes (15-16 students), without any specialized services or supports, for approximately 75% of

his time.  Both the proposed classroom placement and the related services were inappropriate to meet John's needs.

Ms. Doe therefore rejected the proposed 2009-2010 program, as well as the services that the Board had proposed for summer 2009.  She notified the Board in writing of her intent to provide John with summer and school year services per Dr. Kemper's recommendation, and requested that the Board pay for SSA plus the specialized services (1:1 oral and written language instruction and 1:1 Orton-Gillingham reading instruction).  The Board refused (and also refused to honor John's "stay-put" right pursuant to 20 U.S.C. §1415(j)).  Ms Doe was therefore forced to incur all expenses related to John's SSA tuition, his specialized services, and transportation for the 2009-2010 school year.  The oral and written language instruction was provided by Geraldine L. Theadore, M.S., CCC-SLP, and the Orton-Gillingham reading instruction by Janet M. Campbell, M.A.

John made good progress in the program provided by Ms. Doe, consisting of SSA plus specialized services.  Although not a special education school, SSA met John's unique needs in a number of ways.  SSA, with a total enrollment of 28 in its K-6 program, provided the small classes that John needs in each subject throughout the day.  SSA teachers implemented many of the goals and objectives in his IEP.  SSA developed a written plan to address John's executive functioning deficits, and his teachers made modifications and accommodations in order to address his disabilities (e.g., shortening written assignments, changing grading criteria).  To address his academic strengths, SSA provided him with math instruction at his intellectual level (above his grade level).

Just as important as (and woven into) the ways in which SSA appropriately addressed John's academic needs were the ways in which it met his social and emotional needs.  Due to his

unusual presentation, including awkward speech and lack of knowledge of social rules, John is an easy target for being bullied or humiliated by his peers. SSA monitored any type of bullying incident closely, and worked with John to help him learn the vocabulary and actions necessary to successfully participate in groups with his classmates. SSA also works with John to help him cope with his anxiety. In the small, structured, supportive environment at SSA, John feels confident and comfortable; this, in turn, makes him available to learn both from his SSA classes and from his 1:1 services.

In April 2010, Dr. Kemper re-evaluated John. He found that John had made progress in a number of areas over the period of nearly a year since his previous evaluation, during which John had received SSA plus specialized services. Dr. Kemper recommended that John continue to be educated within a small setting where he felt comfortable participating across a variety of communicative contexts. Due to John's progress, Dr. Kemper reduced the amount of recommended 1:1 speech-language therapy to 1.5 hours per day (7.5 hours per week). He continued to recommend 3 hours per week of 1:1 Orton-Gillingham instruction. His recommendations for summer 2010 were consistent with those for summer 2009 (4.5 hours per week of speech and a total of 15 hours of Orton-Gillingham).

The Board failed to convene a PPT meeting to review John's progress or to develop an IEP for the summer of 2010 or for the 2010-2011 school year.

During the summer of 2010, Ms. Doe informed the Board in writing that she intended to provide summer services to John, similar to the program she had provided the previous summer, and that she intended to continue John's placement at SSA for the 2010-2011 school year, with specialized services including 7.5 hours of 1:1 speech-language therapy per week and 3 hours of 1:1 Orton-Gillingham instruction per week. She stated her intent that the Board pay for this

programming.  The Board refused.  The Board continued not to offer any IEP for John.  Again, Ms. Doe incurred all expenses in connection with the program that she provided for him.

On September 30, 2010, Ms. Doe filed a due process hearing request.  A hearing was held on December 1, 15, and 17, 2010 before Hearing Officer Elisabeth Borrino.  Dr. Kemper, Ms. Theadore, Ms. Campbell, SSA Head of School Karen Rosenberg, Ms. Doe, and John testified on the Does' behalf.

The hearing officer issued a decision on January 10, 2011, denying all relief despite the Does' presentation of substantial evidence of the Board's violations of John's rights and despite the Board's failure to produce a single witness who had direct knowledge of John.  Among other things, the hearing officer erroneously concluded that the Board's 2009-2010 IEP offered John a FAPE; that SSA was not an appropriate placement; that no evidence was presented regarding services that Ms. Doe obtained; and that any procedural violations by the Board had not denied John FAPE.  Although the hearing officer acknowledged the Board failed to develop an IEP for the 2010-2011 school year – arguably the most fundamental obligation the Board has under IDEA – she ordered no relief as a result.

The Does commenced this action for review of the administrative decision on February 24, 2011.  The parties filed cross-motions for summary judgment on January 17, 2012.  With their summary judgment motion, the Does submitted as additional evidence information pertaining to John's progress since the date of the administrative hearing, consisting of affidavits from Dr. Kemper, who re-evaluated John in April 2011; Anthony Bram, Ph.D., a clinical psychologist who evaluated John in June 2011; Ms. Theadore and Ms. Campbell, who have continued to provide specialized services to John since the date of the hearing; Ms. Rosenberg, who continues to supervise John's education at SSA; and Ms. Doe.  Each of the witnesses offers

6

relevant, admissible evidence concerning John's profile and progress at SSA.  A summary of the

proposed additional evidence is as follows:

1. **Affidavit of Robert Kemper, Ph.D., CCC/SLP, Including 2011 Psycho-Linguistic Re-Evaluation Report**

Dr. Kemper testified at hearing concerning his evaluations of John in 2008, 2009, and in

2010, and his conclusions from those evaluations as to the inappropriateness of the 2009-2010

program proposed by the Board and the appropriateness of the program Ms. Doe provided during

the 2009-2010 and 2010-2011 school years.  On April 28, 2011, some months after the hearing

officer's decision, Dr. Kemper performed a full psycholinguistic re-evaluation of John. *See*

Affidavit of Robert L. Kemper at ¶3.  A copy of the re-evaluation report is attached to the

affidavit as Exhibit A.  This evaluation provides highly relevant evidence regarding John's

progress since the date of the hearing in the program provided by Ms. Doe (SSA plus specialized

services).

2. **Affidavit of Anthony D. Bram, Ph.D., Including 2011 Psychological Evaluation Report**

Anthony Bram, Ph.D., is a licensed clinical psychologist who evaluated John for the first

time on June 22 and 29, 2011, and therefore was not available to testify at the administrative

hearing.  As Dr. Bram's evaluation report and affidavit reflect, John has made significant

progress since his last neuropsychological evaluation, particularly with regard to his view of

himself (self-esteem), his view of others as available and helpful, and his emerging ability to

attune to and more accurately read other people's motivations.  *See* Affidavit of Anthony D.

Bram at ¶4 & Ex. B.  In Dr. Bram's professional opinion, these changes indicate a profound

revision of John's relational templates; this represents a major achievement for him, which Dr.

Bram attributes in large part to the program that Ms. Doe has been providing for him (SSA plus

specialized services).  *Id.* at ¶6.  Dr. Bram's opinion and evaluation also provide highly relevant

information regarding John's progress.

### 3. <u>Affidavit of Geraldine L. Theadore, MS, CCC-SLP, Including 2010-2011 Speech-Language Progress Report</u>

Since the date of the hearing, Ms. Theadore has continued to provide John with 1:1

speech-language services for approximately 4.5 hours per week.  Affidavit of Geraldine L.

Theadore at ¶2.  Ms. Theadore periodically assesses John's progress; a copy of her most recent

progress report, covering the 2010-2011 school year and the summer of 2011, is attached to her

affidavit as Exhibit B.  *Id.* at ¶¶ 4-5.  Ms. Theadore's affidavit provides information about John's

progress after the hearing date (December 2010) as a result of the program Ms. Doe has

provided.  *Id.* at ¶¶6-7.  Again, this is relevant to show John's progress and to demonstrate the

appropriateness of that program.

### 4. <u>Affidavit of Janet M. Campbell, M.A. Regarding John's Reading and Spelling Instruction Since December 2010</u>

Ms. Campbell testified at hearing concerning the services she provided to John.  Since the

date of the hearing, Ms. Campbell has continued to provide John with 1:1 Orton-Gillingham

reading and spelling instruction.  Affidavit of Janet M. Campbell at ¶4.  Ms. Campbell's affidavit

describes John's progress in reading, spelling, and fluency since that date.  *Id.* at ¶5.  This

evidence, too, is relevant to show John's progress and to demonstrate the appropriateness of the

program Ms. Doe has provided.

### 5. <u>Affidavit of Karen Rosenberg, Including SSA Progress Reports (2010-2011, 2011-2012)</u>

Copies of John's 2010-2011 SSA progress report and his first trimester 2011-2012 SSA

progress report are attached to Ms. Rosenberg's affidavit as Exhibits A and B, respectively.

Affidavit of Karen Rosenberg at ¶4.  These reports, which were not available at hearing (except

for first trimester 2010-2011), show that John has continued to make effective academic progress at SSA since the hearing concluded.  *Id.* at ¶5 & Ex. A, B.  Ms. Rosenberg's affidavit also summarizes her observations, as an educator with direct knowledge of John, regarding John's continued progress in his areas of need, including oral language, social-pragmatic skills, executive functioning, and coping with his anxiety since the hearing. *Id.* at ¶6.  Because SSA is part of the program Ms. Doe has provided, Ms. Rosenberg's observations and John's progress reports are relevant to show his progress in multiple areas and to demonstrate the appropriateness of that program.

**6.  Affidavit of Jane Doe**

The affidavit that Ms. Doe filed with her summary judgment motion confirms that, since the hearing, she has continued to provide John with essentially the same educational program that she provided before the hearing, consisting of SSA plus 1:1 specialized services.  Affidavit of Jane Doe at ¶2.  (Ms. Doe has also submitted a Second Affidavit, filed herewith, which is discussed in greater detail below.  That affidavit is not submitted as additional evidence on the motion for summary judgment, but rather to bring to the Court's attention facts relevant to the Objection.)  Ms. Doe's affidavit describes her observations of John at home, at school, and in public, on which she bases her belief that he has continued to make progress as a result of the program she has provided.  *Id.* at ¶¶3-8, 10.  Ms. Doe's affidavit is relevant to demonstrate his progress, from her perspective as a parent, in his multiple areas of need, and to demonstrate the appropriateness of the program she has provided.

## ARGUMENT

I.    **The Does Were Not Required to File a Motion to Submit Additional Evidence with Their Motion for Summary Judgment.**

The Board's contention that the Does improperly submitted additional evidence is without merit. First, it is well-established that in an action such as this for review of an administrative decision under the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. §§1400-1482, the Court is not limited to the record generated before the hearing officer. Instead, IDEA sets forth an unusual "'intermediate standard of review,'" *P. v. Newington Bd. of Educ.*, 512 F.Supp.2d 89, 99 (D. Conn. 2007) (quoting *Lenn v. Portland Sch. Comm.*, 998 F.2d 1083, 1086-87 (1st Cir. 1993)), *aff'd*, 546 F.3d 111 (2d Cir. 2008), which allows the Court to consider evidence that was not before the hearing officer. IDEA's judicial review provision clearly states that:

> In *any action brought under this paragraph,* the court --
>
> (i)     shall receive the records of the administrative proceedings;
> (ii)    *shall hear additional evidence at the request of a party*; and
> (iii)   basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(i)(2)(C) (emphasis added).

As the court stated in *Burlington*, the statute "contemplates that the source of the evidence generally will be the administrative hearing record, *with some supplementation at trial.*" 736 F.2d at 790. *Accord Grim v. Rhinebeck Cent. Sch. Dist.,* 2003 U.S. App. LEXIS 18672 at *8 (2d Cir. Sept. 9, 2003) ("Federal courts reviewing administrative determinations under the IDEA must base their decisions on 'the preponderance of the evidence, taking into account not only the record from the administrative proceedings, *but also any further evidence presented before the District Court by the parties*") (emphasis added); *Walczak v. Florida Union*

*Free Sch. Dist.,* 142 F.3d 119, 122-123 (2d Cir. 1998) ("A court will fashion appropriate relief based on its assessment of a preponderance of the evidence developed at the administrative proceedings *and any further evidence presented by the parties*") (emphasis added).  The courts in IDEA cases often expect the parties to present such evidence, *see, e.g., Weaver v. Millbrook Cent. Sch. Dist.*, 2011 U.S. Dist. LEXIS 99828 at *22 (S.D.N.Y. Sept. 6, 2011) (criticizing the plaintiffs' failure to "avail[] themselves of the opportunity to present new, and more specific, evidence to fill in the gaps identified by the [State Review Officer]"), and indeed one district court within this circuit has stated that the parties' submission of additional evidence "*is their right* under IDEA."  *Wall v. Mattituck-Cutchogue Sch. Dist.*, 945 F.Supp. 501, 506 (E.D.N.Y. 1996) (emphasis added).

The Board attempts to limit the Does' rights in this case by alleging that it was "inexcusable" for the Does to have submitted additional evidence with their summary judgment motion, instead of first filing a motion seeking leave to do so.  Objection at 10.  The Board fails, however, to cite a single statute, regulation, Federal Rule of Civil Procedure, or Local Rule where such a requirement might be found.  This is because no such procedural requirement exists.  To the contrary, Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56 expressly provide for the filing of affidavits or declarations in support of a motion for summary judgment.  Fed. R. Civ. P. 56(c)(4); Loc. R. 56(a)(3).

Without any supporting legal authority, the Board tries to create a procedural obligation by citing inapposite case law.  For example, the Board asserts that *P.S. v. Brookfield Bd. of Educ.,* 364 F.Supp.2d 237, 239 (D. Conn. 2005), stands for the proposition that certain "procedures" must be followed before a party may submit additional evidence.  The issue in *P.S.*, however, was the tardiness of the plaintiffs' submission.  The Court declined to allow additional

evidence because the plaintiff had offered it more than three years *after* the original complaint had been filed, more than seven months *after* the plaintiff had represented to the Court that the case could be decided on the administrative record alone, and *after* the Court had already issued summary judgment in the defendant's favor.  The instant case is entirely distinguishable, as the Does have not delayed in submitting their additional evidence.  Further, *P.S.* does not discuss or mention any requirement that a motion be filed for leave to submit such evidence.

Review of the other cases cited by the Board reflects, at most, that there are some cases in which parties have filed motions to submit additional evidence, and that there are other cases in which, as far as can be ascertained from the opinion, the parties have not done so.  Of the seven cases that the Board cites on pages 2-3 of its Objection, only one even alludes to such a motion (*A.S. v. Trumbull Bd. of Educ.*, 414 F.Supp.2d 152 (D. Conn. 2006)); the other six do not.  Neither in *A.S.* nor in *P.S.* nor in any of the cases cited from other circuits does the court hold, or even imply, that a motion is required.  The Board may wish that a motion were mandatory, but it fails to provide any authority for that position.

While the Board asserts that it is "established practice" among special education attorneys in Connecticut to file a motion for leave to submit additional evidence, Objection at 3, neither the Does' local counsel, nor the Connecticut special education attorney who represented them at hearing, nor any of the parent-side Connecticut special education attorneys who were queried by the latter are aware of any such practice.  Even assuming *arguendo* that such a practice existed, the Does cannot be held to an unwritten custom that is not set forth in a statute, regulation, or rule.

The Board tries mightily to imply that there was something unfair about the Does' submission of additional evidence with their summary judgment motion, but that is not the case.

The Does' submission of additional evidence is no "trial by ambush." Objection at 9. As discussed above, presentation of additional evidence is a well-established feature of IDEA jurisprudence, intended by Congress. At the start of this action, in their Complaint, the Does asked that the Court "[r]eceive the records of the administrative proceedings and hear additional evidence." Complaint at 19, ¶ A. The Board had months in which it could have done discovery on this issue, had it wanted to; it chose not to do so.[3] As discussed below, most of the facts set forth in the affidavits submitted by the Does have been in the Board's possession for months. The Board has also had ample opportunity to gather other information about John, and has in fact done so. The parties can use that evidence on their motions for summary judgment, and the Court will determine what weight to give it.

    In sum, the Does complied with all known procedural requirements when they submitted additional evidence with their summary judgment motion. It would be patently unfair to impose upon them an additional procedural "requirement" that is apparently known only to the Board and is not explicitly stated in the IDEA, its regulations, the Federal Rules of Civil Procedure, the Local Rules, or case law.[4] To the extent that the Board's objection and motion for stay rest on this basis, they should be denied.

**II.    The Court Should Admit the Does' Additional Evidence and Give It Due Weight.**

    Each of the affidavits that the Does have submitted as additional evidence attests, from the varying perspectives of the several affiants, to John's progress in the program provided by Ms. Doe (consisting of SSA plus specialized services) during the period of approximately one

---

[3] The Does' counsel recalls at least the first of the two telephone conversations with the Board's counsel described in the Objection (p. 9, n.3). In response to the question by the Board's counsel, the Does' counsel stated truthfully that no decision had yet been made regarding additional evidence. At no time did the Board's counsel request that the Board be notified once a decision had been made.

[4] In the event that the Court disagrees, however, the Does ask that this Response and Opposition be deemed a motion for leave to submit additional evidence, *nunc pro tunc*.

year following the conclusion of the administrative proceeding.  This evidence bears directly on

the issue of the program's appropriateness for John, which is the third step in the Court's inquiry

on a reimbursement claim such as the Does assert.  *See* Pl. S.J. Mem., p. 15 (citing cases).  This

evidence was not available at the time of hearing.  The Does offer the evidence to shed additional

light on the administrative record, not to replace it.

Evidence regarding a child's progress in his unilateral placement since the date of the

administrative hearing is exactly the type of "additional evidence" that 20 U.S.C. §1415(i)(2)

(C)(ii) contemplates.  As the First Circuit stated in *Burlington*, the court's reasons for

considering additional evidence may include the existence of "evidence concerning relevant

events occurring subsequent to the administrative proceeding."  736 F.2d at 791.  The Second

Circuit has made clear that evidence of a child's progress in a unilateral placement, thought not

determinative in and of itself, is "relevant to the court's review."  *Gagliardo v. Arlington Cent.

Sch. Dist.*, 489 F.3d 105, 115 (2d Cir. 2007).  The Second Circuit and district courts within the

circuit frequently allow additional evidence concerning such progress.  *See, e.g., Frank G. v.

Board of Educ. of Hyde Park*, 459 F.3d 356, 362, 366-67 (2d Cir. 2006) (affirming district

court's determination that parents were entitled to reimbursement based in substantial part on

"additional evidence of [the student's progress, including testimony of [his] social and

behavioral development, his Stanford Achievement Test results, and his year-end grades" at his

unilateral placement, *id.* at 362); *J.G. v. Kiryas Joel Union Free Sch. Dist.*, 777 F.Supp.2d 606,

636 (S.D.N.Y. 2011) (allowing evidence of progress at the unilateral placement in order to assess

whether the placement was appropriate); *Jennifer D. v. New York City Dep't of Educ.*, 550 F.

Supp. 2d  420, 428, 434 (S.D.N.Y. 2008) (granting summary judgment based in part on affidavits

from educators at the private placement regarding the student's "improved behavior and

academic success" in that placement, *id.* at 428, following the date of the administrative hearing); *Mavis v. Sobol*, 839 F.Supp. 968, 980 (N.D.N.Y. 1994) (additional evidence allowed in order "to 'bring the court up to date' on [the student's] progress since both the due process hearing and the time when [summary judgment] motions were argued").  Courts within other circuits do likewise.  *See, e.g., Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751 (3d Cir. 1995) (district court should not have rejected out of hand additional evidence "that was not available at the time of the administrative hearing, including the testimony of [the student's] private school teachers and expert witnesses," *id.* at 755); *Lenn*, 998 F.2d at 1088 (approving district court's receipt of "newly emergent documentation chronicling [the student's] progress" in his unilateral placement); *Konkel v. Elmbrook Sch. Dist.*, 348 F.Supp.2d 1018, 1023 (E.D. Wis. 2004) (allowing evidence of the student's educational progress in his home-based unilateral placement, which evidence "was not in existence at the time of the administrative hearing"); *Mr. and Mrs. I. v. Maine Sch. Admin. Dist. No. 55*, 2004 U.S. Dist. LEXIS 21525 (D. Me. October 27, 2004); *R.B. v. Bartholomew Consol. Sch. Corp.*, 2004 U.S. Dist. LEXIS 8529 (S.D. Ind. May 4, 2004).

The cases that the Board cites are distinguishable.  In *A.S.*, for example, the district court noted that, as of the date of that decision (February 2006), the Second Circuit had not yet decided whether "evidence of what has occurred after a state administrative decision regarding a student's IEP" could be considered "in order to determine whether that decision denied the student a free appropriate public education," 414 F.Supp.2d at 52-53; the court therefore excluded the evidence.  The court in *A.S.,* however, did not have the benefit of the Second Circuit's decisions in *Frank G.* (decided in July 2006) and *Gagliardo* (decided in 2007), both of which are discussed above.  After *Frank G.* and *Gagliardo*, it is clear that the Second Circuit permits consideration of subsequent evidence.  The district court's decision in *Lillbask v. Sergi*,

l93 F.Supp.2d 503 (D. Conn. 2002), *aff'd in part and reversed in part on other grounds,* 397 F.3d 77 (2d Cir. 2005), on which the Board also relies, predates *Frank G.* and *Gagliardo* by an even greater period of time.  The Does submit that *Lillbask* and *A.S.* are no longer good law, in light of the later Second Circuit guidance, and that they might well come out differently if decided today.

The Does also note that in neither *Lillbask* nor *A.S.* did the parents seek to submit additional evidence concerning a child's progress in his or her unilateral placement.  In *Lillbask,* the student had not been unilaterally placed at all, but rather had remained in his last agreed-upon (or stay-put) placement throughout the proceedings.  193 F.Supp.2d at 505.  In *Lillbask,* which concerned two children, the parents sought to submit evidence relating to the students' return from a private placement to public school.  414 F.Supp.2d at 170.  In the instant case, by contrast, the Does seek consideration of evidence showing that John has continued to make progress in his unilateral placement, which, under *Frank G.* and *Gagliardo,* is clearly relevant to the issue of the appropriateness of that placement.

The Board's other objections to the Does' additional evidence are also without merit.  First, the Board, citing *Burlington,* asks the Court to prohibit testimony from witnesses who were available to testify, or did testify, at hearing.  The Board ignores the actual holding in *Burlington,* however.  There, the First Circuit flatly rejected the notion that any witness who was available at the administrative hearing should be categorically barred from proffering additional evidence to the district court:

> We decline to adopt the rule urged by defendants that the appropriate construction is to disallow testimony from all who did, or could have, testified before the administrative hearing.  We believe that, although an appropriate limit in many cases, a rigid rule to this effect would unduly limit a court's discretion and constrict its ability to form the independent judgment Congress expressly directed.  A salient effect of defendants'

> proposed rule would be to limit expert testimony to the administrative
> hearing.  Our review of the cases involving the Act reveals that in many
> instances the district court found expert testimony helpful in illuminating
> the nature of the controversy and relied on it in its decisional process
> . . . . We also recognize that in many instances experts who have testified
> at the administrative hearing will be bringing the court up to date on the
> child's progress from the time of the hearing to the trial.  It would be
> difficult to draw a sharp line between what had or could have been
> testified to at the administrative hearing and the trial testimony.

*Burlington*, 736 F.2d at 790-791.

In this case, the affidavits of Dr. Kemper, Dr. Bram, Ms. Theadore, and Ms. Campbell constitute expert evidence that will "bring[] the court up to date on [John's] progress from the time of the hearing" to the time of the court's decision on the cross-motions for summary judgment.  Each of the affiants has carefully limited his or her statements to new evidence that was not available at the time of the hearing.  The case is therefore completely distinguishable from cases such as *Roland M. v. Concord Sch. Comm.,* 910 F.2d 983 (1st Cir. 1990), *cert. denied,* 449 U.S. 912 (1991), and *Springer v. Fairfax County Sch. Bd.*, 134 F.3d 659 (4th Cir. 1998), where the proposed additional evidence had been available at the time of hearing, but the parents made a tactical decision not to use it.[5]  Moreover, the evidence of Dr. Bram, Dr. Kemper, Ms. Theadore, and Ms. Campbell is not cumulative, as each affiant possesses a different area of expertise (Dr. Bram is a clinical psychologist; Dr. Kemper in a psycholinguist; Ms. Theadore is a speech and language pathologist; and Ms. Campbell is an Orton-Gillingham reading and spelling instructor).  As discussed above, the expert evidence is relevant to the issue of the progress that John has made in the program provided by Ms. Doe, and to the appropriateness of that program.

---

[5] The Board attempts to make much of the fact that, due to time constraints, the Does did not call Ms. Theadore as a witness at hearing.  The Board tries to use this fact to argue that her affidavit should not be allowed.  However, the affidavit does not set forth what her hearing testimony would have been.  Rather, Ms. Theadore's affidavit offers evidence about John's progress since the date of the hearing.

The Does also note that, although Ms. Theadore did not testify at hearing, the hearing officer considered documents that Ms. Theadore had prepared.  See Pl. S.J. Mem. at 28 & n.16.

Similarly, although Ms. Rosenberg and Ms. Doe may not qualify as expert witnesses, as the head of his school (Ms. Rosenberg) and his parent (Ms. Doe) each has a unique perspective on the progress that John has made since the date of the hearing.  Evidence from private school personnel is relevant, *see, e.g., Frank G.*, 459 F.3d at 362; *Jennifer D.*, 550 F. Supp. 2d at 428, 434, as is evidence provided by a parent.  *See, e.g., Konkel*, 348 F.Supp.2d at 1023;  *Mr. and Mrs. I.*, 2004 U.S. Dist. LEXIS at *5 (characterizing the parent's proffered "testimony concerning her child's post-hearing status" as "a type of testimony that [*Burlington*] contemplates may constitute valid supplementation").  This evidence is not cumulative because Ms. Rosenberg and Ms. Doe observe John at different times and in differing environments.

The Board also devotes considerable energy to arguing against the admissibility, credibility, and probative nature of the affidavits that the Does have submitted.  However, the weight to be given each affidavit is a matter for the Court's discretion, to be assessed in the context of the entire record.  *See, e.g., Susan N.*, 70 F.3d at 760; *Burlington,* 736 F.2d at 791-92. In this case, the Court should allow the additional evidence and give it the substantial weight that it is due.  As one district court has stated, "[C]ourts have erred on the side of admitting evidence reflecting a child's post-hearing status on the theory that the proffered information might shed light on the reasonableness of (and thus be relevant to) the earlier decision."  *Mr. and Mrs. I.,* 2004 U.S. Dist. LEXIS at *7.   The Court should reach the same result in this case.

## III.    <u>The Defendant Has Not Been Prejudiced By the Does' Submission of Evidence, and Should Not be Allowed to Conduct Additional Discovery.</u>

The Board argues that it has been prejudiced by the Does' "unilateral attempt to supplement the record," and alleges that it has had "no equitable opportunity to rebut" the additional evidence.  Objection at 8.  The Board also asserts that it would need to take depositions and/or retain experts in order to respond to the additional evidence.  These

allegations are curious, in light of the fact that the bulk of the information contained in the affidavits has been in the Board's possession for months.  The Board has had the opportunity to review that information with experts of its choosing.  The Board has had the opportunity to discuss, and has in fact discussed, that information at meetings which the affiants attended, and at which one of the Board's attorneys was also present.  The Board has conducted its own re-evaluation of John, including six separate assessments and a school observation.  There was no unfair surprise.  There is no need for depositions or other discovery.

The facts regarding the Board's extensive access to information about John are set forth in the Second Affidavit of Jane Doe ("Doe Aff. II"), filed herewith.  As Ms. Doe explains, the Board conducted a full re-evaluation of John during the spring of 2011.  Doe Aff. II at ¶4.  The re-evaluation consisted of six assessments: a psychological assessment by school psychologist Scott A. Hunt; an educational assessment by special educator Lisa Burns; a language evaluation by speech-language pathologist Heidi Grant, M.S., CCC-SLP; an assistive technology assessment by Stacey B. Fulton, OTR/L, from an outside agency, EASTCONN; an occupational therapy evaluation by Keryl Hallissey, OTR/L; and a physical therapy evaluation by Sandra Robitaille, PT.  *Id.*  The re-evaluation included an observation of John at SSA by two of the evaluators, for nearly two hours.  *Id.*  The Board's psychologist also had the opportunity to observe John at the East Lyme Middle School on three other occasions.  *Id.* at ¶5.

The Board's re-evaluation took place over the course of two months (from April 13, 2011 to June 14, 2011).  *See* Doe Aff. II at ¶4.  It encompassed a total of approximately 13 hours of formal testing, plus the school observation.  *See id.*  The Board sought and obtained input from Ms. Doe and four of John's SSA teachers via questionnaires and similar instruments.  *Id.*  The Board's re-evaluation reports total more than 30 single-spaced pages.  *See id.*  The Board

discussed its re-evaluation at two PPT meetings, one on October 3, 2011 and one on November 4, 2011, totaling nearly five hours. *Id.* at ¶12.

Not only has the Board had extensive access to John in the period since the hearing, but Ms. Doe went out of her way to ensure that the Board received information from the individuals whose affidavits she has offered: Dr. Kemper, Dr. Bram, Ms. Theadore, Ms. Campbell, Ms. Rosenberg, and Ms. Doe herself.  Ms. Doe provided Dr. Kemper's April 28, 2011 re-evaluation report (Exhibit A to his affidavit) to the Board on August 31, 2011 – more than a month before the first of the re-evaluation PPT meetings, and more than four months before she submitted Dr. Kemper's affidavit in this case.  Doe Aff. II at ¶6.

Ms. Doe provided the Board with the report of Dr. Bram's June 2011 psychological evaluation (Exhibit B to his affidavit) on August 28, 2011 – again, more than a month before the first of the re-evaluation PPT meetings and more than four months before she submitted Dr. Bram's affidavit.  *Id.* at ¶7.  She also provided the Board with Dr. Bram's curriculum vitae (Exhibit B to his affidavit) well in advance, on September 25, 2011.  *Id.*

Ms. Doe provided the Board with Ms. Theadore's report of John's progress (Exhibit B to her affidavit) on October 6, 2011 and again on October 30, 2011.  Doe Aff. II at ¶8.  The Board had previously received a copy of Ms. Theadore's curriculum vitae (Exhibit A to her affidavit). *Id.*; *see* Administrative Record 989-995.

Ms. Doe gave the Board copies of John's SSA progress report for the second trimester of the 2010-2012 academic year (which forms part of Exhibit A to Ms. Rosenberg's affidavit) on April 11, 2011.  Doe Aff. II at ¶9.  She sent the Board a copy of John's final progress report for that year (which also forms part of Exhibit A to Ms. Rosenberg's affidavit) on July 31, 2011.  *Id.*

On the same date, she sent the Board a report of John's test results from the Comprehensive Testing Program 4, administered at SSA in April 2011. *Id.*

In addition to meticulously submitting to the Board all relevant documentation regarding John, Ms. Doe arranged at her own expense for the independent experts and service providers to attend the re-evaluation PPT meetings. Dr. Bram participated by speakerphone for approximately one hour in both the October 3, 2011 and the November 4, 2011 meetings. Doe Aff. II at ¶13. Dr. Kemper participated by speakerphone for approximately two hours on October 3, 2011. *Id.* Ms. Theadore and Ms. Campbell attended the October 3, 2011 meeting in person for approximately three hours each. *Id.* Ms. Rosenberg attended the November 4, 2011 meeting in its entirety, and Sandra Auerbach, one of John's SSA teachers, attended the October 3, 2011 meeting for approximately two hours. *Id.* Ms. Doe herself attended not only the October 3, 2011 and November 4, 2011 meetings, but also two other PPT meetings held during the spring of 2011 (February 4, 2011 and March 31, 2011). *Id.* at ¶11. She provided the Board with oral and written input from her perspective as John's parent. *Id.*

The Board had plenty of opportunity to question Dr. Bram, Dr. Kemper, Ms. Theadore, Ms. Campbell, Ms. Rosenberg, Ms. Auerbach, and Ms. Doe at the October 3, 2011 and November 4, 2011 PPT meetings. *See* Doe Aff. II at ¶¶13-16. The Board brought ten representatives to the October meeting and seven representatives to the November meeting. *Id.* at ¶13. All six of the professionals who had evaluated and observed John for the Board were present at the October 3 meeting. *Id.* Three of those individuals were also present at the November 4 meeting. *Id.* In addition, two of the Board's administrators, Assistant Superintendent for Special Education and Pupil Personnel Brian Reas and Assistant Principal Rodney Mosier, participated in each meeting. *Id.* One of the Board's regular education teachers

participated in each meeting also (Stacey Jorgensen on October 3 and Jacqueline Mazzella on November 4). *Id.* The Board's attorney, Melanie Dunn, attended both meetings. *Id.*

As the discussion above and Ms. Doe's second affidavit show, the Board has had extensive access to John during the time period covered by the affidavits that the Does have submitted. The Board has had every opportunity to gather information about John, including observing him at SSA and at East Lyme Middle School. Through Ms. Doe's efforts, the Board has also had extensive access to the independent evaluators and service providers whose affidavits she has submitted, and to the documents that form the exhibits to those affidavits. In light of these facts, it is disingenuous at best for the Board to suggest that it has not had sufficient opportunity to obtain information that would enable it to respond to the affidavits.

The Court should resist the Board's attempt to turn this proceeding into a trial *de novo* by seeking to conduct discovery. The Board may submit affidavits of its own in response to those that the Does have submitted, but in light of all the information available to the Board, discovery that would change the character of this action is unwarranted. The Court should deny any request by the Board for a further stay and set a new schedule for the completion of the briefing on the cross-motions for summary judgment.[6] The Court can then proceed to make the "bounded, independent decision[] – bounded by the administrative record and additional evidence" that IDEA requires. *Burlington*, 736 F.2d at 791.

---

[6] The Does note that, by strategically delaying the filing of its motion for stay, the Board has already obtained a stay. The affidavits to which the Board objects were filed on January 17, 2012. Each was filed separately, with its own docket entry, and separate notice of each was sent to the Board. Thus, the Board was aware of the affidavits as of January 17, 2012. Nevertheless, the Board waited more than two weeks (until February 1, 2012) to file its Objection. It then delayed nearly another ten days (until February 10, 2011) before filing its motion for stay. With summary judgment oppositions scheduled to be filed a week after that (by February 17, 2012), and given that the Does needed time to prepare a response to the motion, the Board succeeded by default in obtaining at least part of its aim in filing that motion.

**Conclusion**

For the reasons set forth above, the Court should deny the Board's objection to the affidavits that the Does have submitted as additional evidence. The Court should accept such evidence and consider it, together with the administrative record, in deciding the parties' motion for summary judgment. The Court should also deny the Board's motion to stay these proceedings and should set new dates for filing of the parties' oppositions and reply briefs on their cross-motions for summary judgment.

Respectfully submitted,

JOHN DOE and JANE DOE

By their attorneys,

/s/ *Barbara L. Cox*
BARBARA L. COX
Fed. Bar No. Ct08523
The Gallagher Law Firm
1377 Boulevard, P.O. Box 1925
New Haven, CT 06509
Tel.: (203) 624-4165; Fax: (203) 865-5598
Fax: (617) 367-2988
Email: bcox@gallagher-lawfirm.com

/s/ *Eileen M. Hagerty*
Eileen M. Hagerty
Fed. Bar No. phv04555
KOTIN, CRABTREE & STRONG, LLP
One Bowdoin Square
Boston, MA 02114
Tel.: (617) 227-7031; Fax: (617) 367-2988
Email: ehagerty@kcslegal.com

Dated: February 17, 2012

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2012, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ *Eileen M. Hagerty*
Eileen M. Hagerty
Fed. Bar No. phv04555