IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
-------------------------------------------------------x
                                    :
JOHN DOE, by and through his Parent, :        3:11 CV 00291 (JBA)
JANE DOE,                           :
                                    :
v.                                  :
                                    :
EAST LYME BOARD OF EDUCATION        :
and the CONNECTICUT STATE           :
DEPARTMENT OF EDUCATION             :        DATE: APRIL 12, 2012
-------------------------------------------------------x
```

<u>ORDER ON DEFENDANT'S OBJECTION TO PLAINTIFFS' SUPPLEMENTATION
OF THE RECORD ON SUMMARY JUDGMENT</u>

On February 24, 2011, plaintiff, John Doe ["John"], by and through his Parent, Jane Doe ["Jane Doe"][1] commenced this action seeking judicial review, pursuant to the Individuals with Disabilities Education Act ["IDEA"], 20 U.S.C. §§ 1400-1482, and Conn. Gen. Stat. § 10-76j, of a decision and order rendered by the Connecticut State Department of Education, dated January 10, 2011, in which plaintiffs seek reversal of the decision and order, insofar as the decision and order denied plaintiffs' requests for relief from defendant East Lyme Board of Education[2] regarding the 2008-09, 2009-10 and 2010-11 school years and the summers of 2009 and 2010. (Dkt. #1).[3] Plaintiffs seek a declaration that the programs that Jane Doe provided during this relevant time frame, consisting of the Solomon Schechter Academy ["SSA"] in New London, Connecticut, plus special education and related services from private providers and services provided during the summers, were and are appropriate

---

[1]John Doe and Jane Doe are collectively referred to as "plaintiffs."

[2]Plaintiffs filed their Notice of Voluntary Dismissal as to defendant Connecticut State Department of Education on March 17, 2011. (Dkt. #16).

[3]Attached to plaintiff's complaint is the Final Decision and Order, dated January 10, 2011. (Exh. A).

to meet the student's needs. (Id.).  Plaintiffs also seek reimbursement of expenses that Jane Doe has incurred in connection with these programs and placements, and appeals the hearing officer's decision and order on grounds that relief should have been granted in John's favor in light of the hearing officer's finding that defendant failed to offer the student any educational services for the summer of 2010 and the 2010-11 school year.  (Id.).

On April 25, 2011, defendant filed its answer (Dkt. #22), and on January 17, 2012, the parties filed cross-motions for summary judgment (Dkts. ##38-48; see also Dkts. ##27-37), with plaintiffs filing six affidavits.  (Dkts. ##41-46).[4]  On February 1, 2012, defendant filed its objection to the affidavits filed in support of plaintiffs' Motion for Summary Judgment (Dkt. #49), and nine days later, defendant filed a Motion to Stay.  (Dkt. #50).  On February 15, 2012, this Magistrate Judge held a telephone status conference to address defendant's Motion to Stay, during which conference this motion was granted and a briefing schedule for responses to defendant's objection was set.  (Dkts. ##51-53).  In accordance with that schedule, on February 17, 2012, plaintiffs filed their response to defendants' objection (Dkt. #54; see Dkts. ##55-56),[5] and on February 24, 2012, defendant filed its reply brief.  (Dkt.

_____

[4]The following affidavits and exhibits were filed with plaintiffs' motion, brief in support and Local 56(a)(1) Statement: affidavit of Dr. Anthony D. Bram, sworn to January 14, 2012 ["Bram Aff't"], with a copy of his curriculum vitae and a copy of the June 2011 psychological evaluation reports attached (under seal)(Dkt. #41); affidavit of Geraldine Theadore, sworn to January 16, 2012 ["Theadore Aff't"], with copies of her curriculum vitae and her report attached (under seal) (Dkt. #42); affidavit of Jane Doe, sworn to January 17, 2012 ["Doe Aff't"](Dkt. #43); affidavit of Janet Campbell, sworn to January 15, 2012 ["Campbell Aff't"], with a copy of her certification attached (Dkt. #44); affidavit of Karen Rosenberg, sworn to January 16, 2012 ["Rosenberg Aff't"], with copies of 2010-11 and 2011-12 progress reports attached (under seal)(Dkt. #45); and affidavit of Dr. Robert Kemper, sworn to January 11, 2011 ["Kemper Aff't"], with a copy of his report attached (under seal)(Dkt. #46).  As just noted, the attached reports have been filed under seal.  (See Dkt. #57).

[5]Along with their response to defendant's objection, plaintiffs filed, under seal, a second affidavit of plaintiff Jane Doe, sworn to February 17, 2012 ["Doe Aff't II"]. (Dkt. #55; see Dkt. #56).

#58).

On March 29, 2011 and again on March 7, 2012, United States District Judge Janet Bond Arterton referred all of the pending motions to this Magistrate Judge.  (Dkts. ##20, 59).

## I.  DISCUSSION

## A. THE ADDITIONAL EVIDENCE AT ISSUE

In support of their motion for summary judgment,[6] plaintiffs submitted the following evidence, which in plaintiffs' words, "pertain[s] to John's progress since the date of the administrative hearing" (Dkt. #54, at 6):

(1) an affidavit of Dr. Anthony D. Bram, sworn to January 14, 2012 ["Bram Aff't"][7]; Dr. Bram is a licensed Clinical Psychologist who conducted a psychological evaluation of John

---

[6]In their Motion, plaintiffs seek relief as to the following portions of the hearing officer's decision: (1) the portion of the decision that holds that the Board offered John a free and appropriate public education ["FAPE"] for the 2008-09 school year, despite the fact that the Board failed to provide John with all of the services specified in his individualized education program ["IEP"] for that school year; (2) the portion of the decision that holds that the Board offered John FAPE for the summer of 2009; (3) the portion of the decision that holds that the Board offered John FAPE for the 2009-2010 school year; (4) the portion of the decision that holds that the Board offered John FAPE for the summer of 2010; (5) the portion of the decision that holds that "SSA is not an appropriate placement" for John; (6) the portion of the decision that holds that the Board is not financially responsible for SSA tuition or for the cost of related services; (7) the failure of the decision to find explicitly that the Board's failure to develop an IEP for the summer of 2010 violated John's right to FAPE, and the failure to order relief for that violation; (8) the failure of the decision to find explicitly that the Board's failure to develop an IEP for the 2010-11 school year deprived John of FAPE, and the failure to order relief for that violation; (9) the failure of the decision to hold that the programs and placements provided by Ms. Doe during the periods at issue were and are appropriate to meet John's needs; (10) the failure to order reimbursement for the programs and placements provided by Ms. Doe, including SSA tuition, additional services (including speech-language therapy and Orton-Gillingham instruction), and transportation during the 2009-10 and 2010-11 school years, and services and transportation during the summers of 2009 and 2010; (11) the failure to grant relief for the Board's violation of John's "stay-put" rights pursuant to 20 U.S.C. § 1415(j); and (12) the conclusion that the board's procedural violations were not sufficiently significant to invalidate any proposed IEP or to constitute a denial of FAPE.  (Dkt. #38, at 2).

[7]Attached to the Bram Aff't is a copy of Dr. Bram's curriculum vitae (Exh. A) and a copy of his report, filed under seal.  (Exh. B). Dr. Bram did not testify at the administrative hearing.

on June 22 and 29, 2011, culminating in reports bearing the same dates (Dkt. #41);

(2) an affidavit of Geraldine L. Theadore, sworn to January 16, 2012 ["Theadore Aff't"];[8] Theadore is a licensed Speech and Language Pathologist who has provided speech and language therapy to John from June 2009 to the present, during the school years and the summers of 2009, 2010 and 2011 (Dkt. #42);

(3)  an affidavit of Jane Doe, sworn to January 17, 2012 ["Doe Aff't"](Dkt. #43);

(4) an affidavit of Janet M. Campbell, sworn to January 15, 2012 ["Campbell Aff't"];[9] Campbell is an English and Reading teacher who has provided John with individualized Orton-Gillingham reading and spelling instruction from July 2009 to the present, and who participated in the administrative hearing (Dkt. #44; see also Dkt. #49, at 2; Admin. Record at 1574);

(5) an affidavit of Karen L. Rosenberg, the Head of the SSA, sworn to January 16, 2012 ["Rosenberg Aff't"];[10] Rosenberg participated in the administrative hearing (Dkt. #45; see also Dkt. #49, at 2; Admin. Record at 1650); and

(6) an affidavit of Dr. Robert L. Kemper, sworn to January 11, 2012 ["Kemper Aff't"];[11] Dr. Kemper is a Clinical Psychologist and licensed Speech and Language Pathologist who has evaluated John on four occasions, and participated in the administrative hearing as

---

[8]Attached to the Theadore Aff't is a copy of Theadore's curriculum vitae (Exh. A) and a copy of her report, filed under seal. (Exh. B). Theadore was present at the hearing but was not called to testify.  (Dkt. #49, at 2 & n.2; Admin. Record at 1641).

[9]Attached to the Campbell Aff't is a copy of her certification conferred upon her by the Academy of Orton-Gillingham Practitioners and Educators. (Exh. A).

[10]Attached to the Rosenberg Aff't are copies of John's progress reports for the 2010-11 school year (Exh. A) and 2011-12 school year (Exh. B), both filed under seal.

[11]Attached to the Kemper Aff't is a copy of Dr. Kemper's April 28, 2011 evaluation report of John, filed under seal.  (Exh. A).

an expert witness.  (Dkt. #46; see also Dkt. #49, at 2, Admin. Record at 1744).

Defendant objects to the submission of the foregoing evidence on grounds that plaintiffs did not submit a motion to supplement the record (Dkt. #49, at 2-3); the evidence should not be admitted as witnesses who testified or could have testified at the due process hearing does not qualify as "additional" evidence (id. at 3-5); the current functioning of the student is not relevant or probative to the issues for the Court (id. at 5-6); the affidavits contain unsupported and conclusory statements which do not meet evidentiary standards under the Federal Rules (id. at 6-7); and defendant was deprived of an equitable opportunity for discovery or rebuttal (id. at 8-10).

In response, plaintiffs contend that each of the witnesses offer "relevant, admissible evidence concerning John's profile and progress at SSA." (Dkt. #54, at 6-7).  Specifically, plaintiffs summarize the evidence as follows: Dr. Kemper's and Dr. Bram's affidavits and the accompanying reports "provide[ ] highly relevant" evidence regarding John's progress since the date of the hearing (id. at 7-8); Theadore's affidavit and the speech language progress report covering the 2010-11 school year and summer of 2011 provide information to show John's progress after the date of the hearing (id. at 8); the Campbell affidavit describes John's progress in reading, spelling, and fluency since the hearing (id.); the 2010-11 SSA progress reports and the first trimester 2011-12 SSA progress report attached to Rosenberg's affidavit were not available at the hearing (with the exception of the first trimester of 2010-11), and these, along with Rosenberg's affidavit, show John's continued progress in multiple areas, and demonstrate the appropriateness of the program (id. at 8-9); and the affidavit of Jane Doe is relevant to demonstrate his progress, from her perspective as a parent, in his multiple areas of need, and to demonstrate the appropriateness of the program she has

provided.  (Id. at 9). According to plaintiffs, plaintiffs are not required to file a motion to submit additional evidence with their motion for summary judgment, and if a motion is required, plaintiffs are now so moving nunc pro tunc, and the Court is not limited to the records generated before the hearing officer (id. at 10-13); the Court should admit the additional evidence and give it due weight under Second Circuit case law, and the evidence is not evidence that was available at the time of the hearing, nor is it cumulative as the affiants observed John at different times and in differing environments (id. at 13-18); and defendant has not been prejudiced by plaintiffs' submission of evidence, and should not be allowed to conduct additional discovery as the bulk of this information has been in the Board's possession "for months[,]" and the Board has conducted its own re-evaluation of John, including six separate assessments and a school observation.[12]  (Id. at 18-22).

In response, defendant insists that plaintiffs' submission of additional evidence is not automatic (Dkt. #58, at 2-3); this case does not involve circumstances that warrant consideration of additional evidence beyond the administrative record and such evidence might be deemed relevant only after a decision has been made regarding a challenged

_____

[12]According to plaintiffs, the re-evaluation took place from April 13, 2011 to June 14, 2011 and encompassed thirteen hours of formal testing, plus the school observation.  (Doe Aff't II ¶ 4). Specifically, it consisted of six assessments: a psychological assessment by a school psychologist; an educational assessment by a special educator; a language evaluation by a speech-language pathologist; an assistive technology assessment; an occupational therapy evaluation; and a physical therapy evaluation, and it included an observation of John by two evaluators for nearly two hours.  (Id. ¶¶ 4-5).   Jane Doe avers that she provided Dr. Kemper's April 28, 2011 re-evaluation report to the Board on August 31, 2011 (id. ¶ 6); she provided the Board with Dr. Bram's June 2011 psychological evaluation on August 28, 2011 and with Dr. Bram's curriculum vitae on September 25, 2011 (id. ¶ 7); she provided Theadore's report to the Board on October 6 and 30, 2011 (id. ¶ 8); and she provided copies of the SSA progress report for the second trimester of the 2010-11 academic year on April 11, 2011, and sent a copy of the final progress report for 2011, along with John's test results from the Comprehensive Testing Program 4, administered at SSA, on July 31, 2011 (id. ¶ 9).  Additionally, Jane Doe arranged at her expense for the independent experts and service providers to attend the re-evaluation PPT meetings on October 3 and November 4, 2011, at which the Board had ample opportunity to question Drs. Bram and Kemper, Ms. Theadore, Ms. Campbell, Ms. Rosenberg, and Jane Doe.  (Id.  ¶¶ 11-16).

individualized education program ["IEP"] or provision of a free and appropriate public education ["FAPE"], and in this case, the evaluations and reports are too far removed from the school years at issue to be relevant to the determination of whether SSA was an appropriate placement for the student plaintiff (id. at 3-7); and defendant has been prejudiced as a planning and placement team ["PPT"] meeting at which this information was presented was not the appropriate forum for the Board to conduct discovery or question witnesses in a similar manner to a deposition or at trial, and any evidence submitted at PPT meetings last year would be more appropriate for a hearing officer to consider in the first instance, if plaintiff were to file another due process claim for reimbursement, as plaintiffs have not yet exhausted their administrative remedy for last year.  (Id. at 7-8).

B. DISCUSSION

The IDEA provides in pertinent part:

In any action brought under this paragraph, the court –

(i) shall receive the records of the administrative proceedings;

(ii) shall hear additional evidence at the request of a party; and

(iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(i)(2)(C).  As the parties appropriately note, "The starting point for determining what additional evidence should be received . . . is the record of the administrative proceeding[,]" and the Act contemplates that there will be "some supplementation at trial." Town of Burlington v. Dept. of Educ. of Mass., 736 F.2d 773, 790 (1st Cir. 1984), aff'd on other grounds sub nom. School Comm. of Town of Burlington v.

Dept. of Educ. of Mass., 471 U.S. 379 (1985). "The reasons for supplementation will vary[.]"

Id.  They may include "gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing."  Id.   Thus, while the court in Burlington stated that certain evidence may be excluded out of deference to the administrative proceedings, the First Circuit declined to adopt a bright-line rule, choosing instead to leave "[t]he determination of what is 'additional' evidence . . . to the discretion of the trial court which must be careful not to allow such evidence to change the character of the hearing from one of review to a trial de novo."  736 F.2d at 791-92; see Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1473 (9th Cir. 1993), cert. denied, 513 U.S. 825 (1994)(defendants submitted affidavits regarding educational programs available as nearly a year had passed since the hearing officer rendered his initial decision; the Ninth Circuit held that the district court had the discretion to admit additional evidence "concerning relevant events occurring subsequent to the administrative hearing.").

Relying on Burlington, defendant asks the Court to prohibit the testimony of the witnesses who did, or could have, testified at the administrative hearing, including Jane Doe, Campbell, Rosenberg, and Dr. Kemper, and also Theadore, who was present and available at the hearing, but who plaintiffs chose not to call to testify.  (Dkt. #49, at 4-5)  However, the Burlington court rejected such a "rigid rule":

> We decline to adopt the rule urged by defendants that the appropriate construction is to disallow testimony from all who did, or could have, testified before the administrative hearing. We believe that, although an appropriate limit in many cases, a rigid rule to this effect would unduly limit a court's discretion and constrict its ability to form the independent judgment Congress expressly directed. A salient effect of defendants' proposed rule would be to limit expert testimony to the administrative hearing. . . . There could be some valid reasons for not presenting some or

all expert testimony before the state agency. . . . We also recognize that in many instances experts who have testified at the administrative hearing will be bringing the court up to date on the child's progress from the time of the hearing to the trial.  It would be difficult to draw a sharp line between what had or could have been testified to at the administrative hearing and the trial testimony.

Id. at 790-91.

### 1. MOTION FOR LEAVE TO SUPPLEMENT THE RECORD

Defendant contends that while the IDEA permits the supplementation of the administrative record, this supplementation "must be timely sought."  (Dkt. #49, at 2, quoting P.S. v. Brookfield, 364 F. Supp. 2d 237, 239 (D. Conn. 2005)).[13]  Additionally, defendant contends that filing a Motion to Supplement the Record is "an established practice among special education attorneys in this District[,]" and case law exhibits the existence of such a practice.  (Dkt. #49, at 2-3).  While defendant is correct that such a motion for permission to supplement the record has been filed in one of the five cases cited by defendant,  see, e.g., A.S. v. Trumbull Bd. of Educ., 414 F. Supp. 2d 152, 169-70 (D. Conn. 2006)(plaintiffs filed a Motion to Supplement the Record to add medical and educational records that were not available at the time of the hearing officer's decision),[14]  there is no requirement that such motion must be filed, and even if it were the standard practice that defendant asserts, plaintiffs have requested the court to consider their motion nunc pro tunc.

---

[13]Defendant's reliance on Judge Underhill's language in P.S. is misplaced.  In P.S., Judge Underhill admonished plaintiff for seeking to supplement the administrative record with additional testimonial evidence on a motion for reconsideration of Judge Underhill's ruling on summary judgment, some three and a half years since that case was filed.  P.S., 364 F. Supp. 2d at 239.

[14]See also Burlington, 736 F.2d at 791 (a motion may be made to allow a witness to testify within specified limits stating the justification for the testimony); accord Monticello Sch. Dist. No. 25 v. George L., 102 F.3d 895, 901 (7th Cir. 1996)(in briefs to the court, plaintiffs described the evidence they would have presented to the district court following the hearing).

## 2. CONSIDERATION OF ADDITIONAL EVIDENCE

As referenced above, plaintiffs are seeking reimbursement for the cost of placement at SSA, and plaintiffs seek to supplement the record with evidence of John's progress subsequent to the administrative hearing held in December 2010, and the decision of January 10, 2011, which evidence plaintiffs assert demonstrates John's continued progress and the appropriateness of the placement.  In determining whether parents are entitled to retroactive reimbursement for the cost of private school from the state, the U.S. Supreme Court has established a two-prong test: (1) was the IEP proposed by the school district inappropriate; and  (2) was the private placement appropriate to the child's needs, see Burlington, 471 U.S. at 370; Gagliardo v. Arlington Central Sch. Dist., 489 F.3d 105, 111-12 (2d Cir. 2007)(citations omitted); Frank G. v. Bd. of Educ. of Hyde Park, 459 F.3d 356, 363 (2d Cir. 2006)(citations omitted), cert. denied, 552 U.S. 985 (2007).  It is the parents seeking reimbursement who bear the burden of demonstrating that the private placement is appropriate, even if the proposal in the IEP is inappropriate.  Gagliardo, 489 F.3d at 112 (citation omitted); Frank G., 459 F.3d at 364 (citation omitted).

Defendant, relying on the decision of U.S. District Judge Mark R. Kravitz in A.S., 414 F. Supp. 2d at 170, contends that the current functioning of the child is neither relevant nor probative of the issues for the Court.  (Dkt. #49, at 5-6).  In A.S., plaintiffs alleged, inter alia, that the board denied the children a FAPE by refusing to reimburse the cost of placing them in a private school in 2003-04, and the issues were brought to the court on motions for summary judgment, prior to which, plaintiffs sought to introduce documents relating to the children's return to public school in 2004-05, including IEPs, minutes of PPT meetings, disciplinary records, educational evaluations conducted by the Board, report cards,

attendance records, health records, notes from the school nurse, teachers' reports, notes from the parents and doctors excusing his absences, and psychological evaluations.  414 F. Supp. 2d at 170.  As in this case, defendant opposed the submission of this information on grounds that it would transform the proceedings from a review of the hearing officer's decisions into a trial de novo; what happened in the 2004-05 school year did not bear on whether the Board provided the children with a FAPE during the 2003-04 school year; the Court would be required to hear substantial additional testimony in order to understand the context and content of the requested records; and plaintiffs should not be allowed to use their supplementation request as a means of evading the IDEA's exhaustion requirements. Id.  Judge Kravitz noted that  "the Second Circuit [had] not yet addressed whether it is appropriate for a district court to consider evidence of what has occurred after a state administrative decision regarding a student's IEP – so called 'retrospective evidence' – in order to determine whether that decision denied the student a [FAPE]."  Id. (citation omitted).  He continued: "Like most of the other courts that have considered the question, this Court is skeptical of the propriety of permitting parties to an administrative appeal to supplement the record with retrospective evidence[,]" but "because the Court believe[d] that the supplementation requested" in that case "would, on balance, prove unhelpful[,]" Judge Kravitz declined to decide the issue definitively.  Id. at 171.

Five months later, the Second Circuit issued its decision in Frank G., affirming U.S. District Judge Charles Brieant's decision after a bench trial.[15]  459 F.3d at 361-62.  In that

---

[15]In Frank G., the board conceded that it failed to offer a FAPE to the child, but argued that the private placement was not appropriate.  459 F.3d at 361-62. Plaintiff sought tuition reimbursement for the 2001-02 school year, which Judge Brieant awarded after concluding "that the facts from the administrative record and the trial demonstrated that '[the child] made meaningful academic and social progress and received educational benefit[.]'"  Id. at 362.

11

case, the district court's decision was "not based solely on the evidence before the [hearing officer], but was informed by additional evidence" of the child's progress, including testimony of the child's social and behavioral development, Stanford Achievement Test results, and year-end grades.  459 F.3d at 362 (internal quotations omitted).  However, in that case, unlike here, the evidence was presented at a bench trial, wherein there was opportunity for cross-examination.

In 2007, the Second Circuit addressed this issue again in Gagliardo, 489 F.3d at 107, a reimbursement action brought pursuant to 20 U.S.C. § 1415(i)(2), in which case the parties agreed that the child belonged in a private school, but disagreed as to which school was appropriate.  In that case, the Second Circuit reversed the district court's award of summary judgment in favor of plaintiffs on grounds that the district court's decision to reject the hearing officer's determination regarding the appropriateness of the private school chosen by the parents was not supported by the record.  Id.   At the conclusion of its decision, the Second Circuit "add[ed] a word about the position a district court finds itself" when called upon to review a case in which parents enrolled their child in a private school, "believing it to be the best thing for the child, and can point to their child's record of success at the school they chose."   Id. at 115.  The court commented that "[i]t is understandable that a district court would be receptive to parents under these circumstances[,]" as a record of the child's success, or progress, at the school of the parents' choice, while not determinative, "is relevant to the court's review."[16] Id.

One year ago, in our sister court, this issue arose again in the context of a reimbursement action heard through cross-motions for summary judgment; plaintiffs sought

_____

[16]The Court also noted that while "relevant[,]" such progress "does not itself demonstrate that a private placement was appropriate."  Id. (citations omitted).

compensation for unilateral placement supports and compensatory education for the 2005-06 school year when the child was unilaterally placed in a private Jewish yeshiva.  J.G. ex rel. N.G. v. Kiryas Joel Union Free Sch. Dist., 777 F. Supp. 2d 606 (S.D.N.Y. 2011).  In that case, U.S. District Judge William G. Young, sitting by designation, noted the absence of Second Circuit precedent on the issue of retrospective evidence:

> The First, Third, and Ninth Circuits have held that it is improper to consider retrospective evidence of a student's performance in evaluating the appropriateness of an IEP. See Adams v. Oregon, 195 F.3d 1141, 1149 (9th Cir.1999); Carlisle Area Sch. v. Scott P. ex rel. Bess P., 62 F.3d 520, 530 (3d Cir.1995); Roland M. v. Concord Sch. Comm., 910 F.2d 983, 992 (1st Cir.1990). The Second Circuit has not yet joined this debate. See D.F. ex rel. N.F. v. Ramapo Cent. Sch. Dist., 430 F.3d 595, 598–99 (2d Cir. 2005) (recognizing the controversy over whether "it is error to consider retrospective evidence in assessing the substantive validity of an IEP" but declining to rule on it); see also [T.P. ex rel. v.] Mamaroneck [Union Free Sch. Dist.], 554 F.3d [247,] 251, n.1 (2d Cir. 2009)(finding resolution of the issue unnecessary in the context of the case).

777 F. Supp. 2d at 636, n.26.  Judge Young then noted the Second Circuit's reliance on retrospective evidence in Frank G. and Gagliardo to uphold a parent's choice of private placement,  before reaching what it believed to be "the most equitable result" in the "absence of Second Circuit precedent to the contrary[.]" Id. (citations omitted).  Judge Young considered the information that was before defendant's Committee on Special Education["CSE"] at the time of the student's IEP meeting in determining whether the CSE offered him a FAPE, id., citing J.R. & B.R. ex rel. S.R. v. Board of Educ., 345 F. Supp. 2d 386, 395 (S.D.N.Y.2004)("the determination [that the IEP at issue is reasonably calculated to enable the student to receive educational benefits] . . . is necessarily prospective in nature; we therefore must not engage in Monday-morning quarterbacking guided by our knowledge of [the student's] subsequent progress at [her school], but rather consider the propriety of the IEP with respect to the likelihood that it would benefit [her] at the time it was devised."),

and, "consistent with Frank G. and Gagliardo," found that "the equities weigh in favor of considering [the child's] progress at [the private placement] during the 2005–06 school year—because the record [did] reflect some progress favorable to the parents' position—in assessing whether this private placement was appropriate." Id. (citations omitted).  Judge Young declined to expand the record to include a report prepared in January 2008 by a special education teacher hired by the child's parents to observe him in his private placement classroom, because defendant had no opportunity to challenge the unsworn statements, and because her observations were "irrelevant, having been made a full year and a half after the end of the 2005–06 school year at issue here and roughly nine months after the impartial hearing came to an end." Id., citing A.S., 414 F. Supp. 2d at 171 (holding that, irrespective of the validity of retrospective evidence generally, evidence pertaining to an entirely different school year than the one at issue is "of questionable relevance").

Applying the case law to the matter at hand, the Court will now address the specific evidence that plaintiffs wish the Court to consider.[17]  Dr. Bram's affidavit and report reflect the progress that John has made since his last neuropsychological evaluations in October 2009 and May 2009.  (Dkts. ## 41 & 57). The 2009 report was applicable to the 2008-09 school year, and this 2011 report is too far removed from the 2009-10 school year. However, the content of the report may be relevant to the determination of whether SSA was an appropriate placement for the child in 2010-11.  Similarly, the remaining school records

---

[17]In doing so, this Court keeps in mind that "[c]hildren are not static beings; neither their academic progress nor their disabilities wait for the resolution of legal conflicts." Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 760 (3d Cir. 1995).  Thus, "[w]hile a district court appropriately may exclude additional evidence, a court must exercise particularized discretion in its rulings so that it will consider evidence relevant, non-cumulative and useful in determining whether Congress' goal has been reached for the child involved." Id.

for the 2010-11 school year may be relevant,[18] but Rosenberg, who had the opportunity to testify at the administrative hearing, need not be given an additional opportunity to aver as to the child's progress as the report cards speak to that precise issue, nor is her affidavit necessary to explain the additional school records.  Theadore was present, but was not called to testify at the hearing, but her reports completed prior to the hearing date were marked for identification at the hearing.   (Theadore Aff't ¶ 4).[19]  Her report of September 2011, which covers the school year 2010-11 and the summer of 2011, may be relevant as evidence of the progress that the child has made in oral and written grammar and syntax since the administrative hearing in December 2010.  Similarly, Campbell and Dr. Kemper, both of whom testified at the hearing, aver to the child's progress since the date of the hearing, which is evidence this Court may consider.  (Campbell Aff't ¶ ¶ 4-5, 7; Kemper Aff't ¶¶ 2,4-5).[20]

Accordingly, the Court <u>may</u> consider this above-referenced evidence, and the use of this conditional verb is included intentionally, because the additional evidence of the child's progress becomes relevant <u>only if</u> the Court later concludes that the challenged IEP was

---

[18]The Court declines to consider the 2011-12 school year records, which are a full year after the last evidence before the hearing officer.

[19]Defendant asserts that Theadore was present, but plaintiffs chose not to call her to testify, but instead seek to introduce the testimony at this late stage. The evidence from Theadore, as is most of the evidence, as discussed above, is evidence of the child's progress since the date of the hearing, and thus, this evidence falls within the intent of <u>Burlington</u> -- that is, to permit supplementation of "evidence concerning relevant events occurring subsequent to the administrative hearing."  <u>Burlington</u>, 736 F.2d at 790.

[20] However, in the Theadore, Campbell, and Dr. Kemper affidavits, each of the affiants aver to more information than he or she has actual knowledge (<u>see</u> Theadore Aff't ¶ 6 (except for the last sentence); Campbell Aff't ¶ 6; Kemper Aff't ¶ 4 (with the exception of the first sentence); to the extent that the Court considers these affidavits, these sections will not be considered. Similarly, the Doe affidavit goes far beyond attesting to the child's progress, and the Court will assign such weight as it deems appropriate in light of the entire record before the Court. <u>See Susan N.</u>, 70 F.3d at 760.

inadequate to provide the child with a free and appropriate public education.  M.C. ex rel Mrs. C. v. Voluntown Bd. of Educ., 226 F.3d 60, 66 (2d Cir. 2000).  As discussed above, the issue of whether plaintiffs are entitled to reimbursement for the costs of private school turns on two questions: first, whether the challenged IEP was adequate to provide the child with a free and appropriate public education; and second, whether the private educational services obtained by the parents were appropriate to the child's needs.  Id., citing Burlington, 471 U.S. at 370 (additional citations omitted).  If the Court later determines that a challenged IEP was inadequate, then reimbursement is appropriate only if the parents' private placement was itself adequate under the Act.  Id.  It is at that point that the Court may consider additional evidence.  "[B]ecause the authority to grant reimbursement is discretionary, equitable considerations relating to the reasonableness of the action taken by the parents are relevant in fashioning relief."  Frank G., 459 F.3d at 363-64 (internal quotations & alterations omitted).  In this case, briefing on the cross-motions for summary judgment is not yet complete, and the Court has yet to address the first prong of the aforementioned test.  Accordingly, the Court neither can nor will assign weight to the proposed additional evidence at this juncture.

## II. CONCLUSION

For the reasons stated above, defendant's Objection (Dkt. #54) is granted in part and denied in part.  As set forth in the February 2012 Electronic Order (Dkt. #53), counsel shall contact this Magistrate Judge's Chambers to schedule a telephonic status conference, to address the dates by which additional briefs will be filed in this case.

See 28 U.S.C. § 636(b)**(written objections to ruling must be filed within fourteen days after service of same);** FED. R. CIV. P. 6(a), 6(e) & 72; Rule 72.2 of the

16

Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; <u>Small v. Secretary, H&HS</u>, 892 F.2d. 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**

Dated at New Haven, Connecticut, this 12th day of April, 2012.


 /s/ Joan G. Margolis, USMJ
Joan Glazer Margolis
United States Magistrate Judge

17