UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN DOE, by and through his Parent JANE DOE,<br>*Plaintiff*,<br><br>v.<br><br>EAST LYME BOARD OF EDUCATION,<br>    *Defendant*. | Civil No. 3:11cv291  (JBA)<br><br><br><br>September 21, 2012 |

RULING ON PARTIES' OBJECTIONS TO THE RECOMMENDED RULING

On August 14, 2012, Magistrate Judge Margolis issued a Recommended Ruling [Doc. # 71] ("Rec. Ruling"), on parties' cross–motions for summary judgment, granting in part and denying in part Plaintiff's Motion for Summary Judgment [Doc. # 38], and granting in part and denying in part Defendant's Motion for Summary Judgment [Doc. # 47]. On September 4, 2012, Plaintiff filed a timely objection [Doc. # 75] to the Recommended Ruling, claiming that Magistrate Judge Margolis:  (1) erred in calculating the Plaintiff's entitlement to relief for the violation of his "stay–put" right under the Individuals with Disabilities Education Act ("IDEA"); (2) erred in finding that Defendant's proposed 2009–2010 Individual Education Plan ("IEP") provided a Free and Appropriate Public Education ("FAPE"); (3) erred in finding that Plaintiff's proposed placement for 2009–2010 was not appropriate to meet his needs; and (4) erred in finding that Defendant's proposed 2009–2010 IEP did not violate the procedural requirements of the IDEA. Defendant also timely objected to the Recommended Ruling, insofar as it (1) found that Defendant had denied John Doe a FAPE for the 2010–2011 school year; and (2) ordered reimbursement for the violation of Plaintiff's stay–put right.  For the reasons that follow, the parties' objections are overruled, with the exception that Plaintiff's objection that he is entitled to reimbursement through the

pendency of these proceedings is sustained, and as a result, the Recommended Ruling will be adopted as modified.

I. FACTUAL AND PROCEDURAL BACKGROUND

The facts leading up to this lawsuit are presented in detail on pages four through eighteen of the Recommended Ruling and are incorporated by reference herein. Briefly, Plaintiff's suit is an administrative appeal of a due process hearing officer's decision finding that Defendant offered John Doe a FAPE, Plaintiff's proposed placement was not an appropriate placement, and Defendant was not financially responsible for the cost of Plaintiff's private placement and related expenses. In the Recommended Ruling, Magistrate Judge Margolis held that Defendant had violated Plaintiff's right to a FAPE in the 2010–2011 school year, and had violated Plaintiff's stay–put right. (Rec. Ruling [Doc. # 71] at 44–45.) The Recommended Ruling also held that Defendant's 2009–2010 proposed IEP was adequate to provide a FAPE, and Plaintiff's unilateral placement with related services was not appropriate. (*Id.* at 28–34, 38–43.) Magistrate Judge also ordered Defendant to reimburse Plaintiff for the violation of his stay–put right. (*Id.* at 27 n.28, 44–45 n.54.)

II. DISCUSSION[1]

Plaintiff objects to the Recommended Ruling on the following four grounds: (1) reimbursement for the violation of Plaintiff's stay–put right should continue through the disposition of this case, rather than only through the 2009–2010 school year; (2) Defendant's proposed IEP for the 2009–2010 school year was not adequate to provide a FAPE; (3)

---

[1] Pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 72.2(b), the portions of the Magistrate Judge's decision objected to by Plaintiff are reviewed de novo, and any part or the entirety of the Recommended Ruling may be adopted, rejected, or modified.

2

Plaintiff's placement at Solomon Schechter Academy ("SSA") was adequate to meet his needs; and (4) Defendant's proposed 2009–2010 IEP violated the procedural requirements of the IDEA. Defendant objects to the Recommended Ruling on the following two grounds: (1) Plaintiff is not entitled to reimbursement for the violation of his stay–put right; and (2) Defendant did not deny Plaintiff a FAPE by failing to prepare an IEP for the 2010–2011 school year.

### A. Plaintiff's Stay–Put Right

Defendant claims that SSA was never Plaintiff's stay–put placement, and that even if the Court were to find that Plaintiff had a stay–put right to that placement, his entitlement to reimbursement did not begin to accrue until due process proceedings had been initiated. Plaintiff counters that he is entitled to reimbursement of his stay–put right, but that such reimbursement should continue until the final resolution of his claims via the issuance of this opinion. The Recommended Ruling held that "the stay–put issue concerns the February 10, 2009 IEP, which amended the December 18, 2008 IEP" (Rec. Ruling at 26), and that therefore "[P]laintiff is entitled to reimbursement for services set forth in the stay–put 2008–2009 IEP, from the date the dispute about the 2009–2010 IEP arose until the dispute over that school year was no longer pending, regardless of the outcome of [the] claim for reimbursement of all expenses based on the Board's denial of FAPE" (*id.* at 27).

Under 20 U.S.C. § 1415(j), "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then–current educational placement of the child." The Second Circuit has interpreted the term "then–current education placement" to mean: "(1) typically the placement described in the child's most recently implemented

IEP; (2) the operative placement actually functioning at the time . . . when the stay put provision of the IDEA was invoked; and (3) [the placement at the time of] the previously implemented IEP." *Mackey ex rel. Thomas M. v. Board of Educ. for Arlington Central School Dist.*, 386 F.3d 158, 163 (2d Cir. 2004) (internal quotation marks and citations omitted) (alterations in original). In John Doe's December 18, 2008 IEP, Defendant agreed that "[John] will remain at Solomon Schechter at parent expense. The district will provide OT/PT (1.5 hours per week), S/L (2.5 hours/week), and Orton Gillingham tutoring (5.0 hours per week)." (Admin. Rec. [Doc. # 48] at 2117.) On February 10, 2009, Plaintiff's IEP was amended to increase the amount of his speech–language therapy, but SSA continued to be the accepted placement. (*See id.* at 2145.) Thus, in the "most recently implemented IEP"—the December 18, 2008 IEP as amended by the February 10, 2009 IEP—Plaintiff's placement was SSA, with related services provided by Defendant. SSA was also "the operative placement actually functioning at the time" when Jane Doe invoked the stay–put provision. (*See* Admin. Rec. at 878–79, 882, 886–87). Therefore SSA was Plaintiff's stay–put placement. Defendant's objection that Plaintiff never acquired stay–put rights at SSA is overruled.

In the Recommended Ruling, Magistrate Judge Margolis found that Plaintiff's stay–put rights were triggered in June 2009, when Ms. Doe formally rejected the 2009–2010 IEP and made clear she was claiming her stay–put rights. (*See* Rec. Ruling at 26 (citing Admin. Rec. at 878–79, 882, 886–87 ("I have a PPT from East Lyme, stating that [SSA] is where [John is] supposed to go, pending completion of any review proceedings, unless the parents and the State or local and education otherwise agree. You're proposing a change of placement. There was an IEP from East Lyme, saying he's [at SSA]. Now you're changing

4

the placement. It violates the Stay Put. He's supposed to stay here until we have a proceeding.")).) Defendants object that Plaintiff's right to stay–put reimbursement was not triggered until administrative proceedings challenging the 2009–2010 IEP began. In support of this position, Defendant cites *Weaver v. Millbrook Cent. School Dist.*, 812 F. Supp. 2d 514 (S.D.N.Y. 2011), which found that a plaintiff's right to reimbursement for his pendency placement was not triggered when the plaintiff notified the defendant that it objected to the proposed IEP, but rather when the plaintiff filed a due process complaint. *Id.* at 526–27.

However, in *Weaver*, the student had been unilaterally placed in private school by his parents after rejecting the proposed IEP, and the private school only became the student's stay–put placement based upon the hearing officer's decision. Thus, the *Weaver* court found that the plaintiffs should not benefit from their delay in requesting a hearing, where the defendant had not previously agreed to pay for a private placement. Here, however, SSA became Plaintiff's stay–put placement through an IEP accepted by both parties, and it was Defendant, not Plaintiff who proposed changing John Doe's placement. Furthermore, the Second Circuit has recognized that "[u]nder the IDEA, a "stay put" is a procedural right that is activated as soon as the PPT reaches an impasse." *A.S. ex rel. P.B.S. v. Board of Educ. for Town of West Hartford*, 47 F. App'x 615, 616 n.2 (2d Cir. 2002). The PPT at issue in this case reached an impasse before the conclusion of the 2008–2009 school year (*see* Admin. Rec. at 878–79, 882, 886–87), and thus Plaintiff is entitled to reimbursement for the related services provided for in the February 10, 2009 IEP from the date the dispute over the 2009–2010 IEP arose, until the dispute over that school year was no longer pending. Defendant's objection as to when Plaintiff's stay–put right was triggered is therefore overruled.

The Recommended Ruling held that Plaintiff was entitled to stay–put reimbursement only for the 2008–2009 and 2009–2010 school years, because the dispute over the 2009–2010 school terminated at the end of that school year. (*See* Rec. Ruling at 27 n.28.) Plaintiff objects that they are entitled to relief through the disposition of this case, because the dispute over the 2009–2010 IEP was not resolved in advance of this ruling. The Second Circuit has recognized that "until a new placement is established by either an actual agreement between the parents and the [School] District, or by an administrative decision upholding the [School] District's proposed placement which [the parents] choose not to appeal, *or by a court*, the [School] District remains financially responsible [for stay–put reimbursement.]" *Board of Educ. of Pawling Central School Dist. v. Schulz*, 290 F.3d 476, 484 (2d Cir. 2002); *see also Brennan v. Regional Sch. Dist. No. 1 Bd. of Educ.*, 531, F. Supp. 2d 245, 267 (D. Conn. 2007) (holding that the right to stay–put reimbursement runs until the dispute over the challenged school year is no longer pending). The dispute over John Doe's 2009–2010 IEP remains pending until Defendant's proposed placement is upheld by the Court in this case, and thus Plaintiff's objection as to when his right to stay–put reimbursement terminates is sustained. The Recommended Ruling will be modified to reflect that Plaintiff is entitled to reimbursement for the related services agreed to in his 2008–2009 IEP from the date on which the dispute over the 2009–2010 IEP arose, until the disposition of this case.

B.     The 2009–2010 IEP

The Second Circuit has established a three–step test to determine whether parents are entitled to private school reimbursement under the IDEA:

> The first two steps focus on whether the proposed IEP was inadequate to afford the child an appropriate public education. First we examine whether the state has complied with the procedures set forth in the IDEA. Second we

6

>consider whether the IEP developed through the Act's procedures is reasonably calculated to enable the child to receive educational benefits.

*Cerra v. Pawling Cent. School Dist.*, 427 F.3d 186, 192 (2d Cir. 2005). If a court finds that "the IEP is procedurally or substantively deficient, we proceed to the third step and ask whether the private schooling obtained by the parents is appropriate to the child's needs." *Id.* In the Recommended Ruling, Magistrate Judge Margolis found that the proposed 2009–2010 IEP was both procedurally and substantively sufficient under the IDEA, and thus Plaintiff was not entitled to reimbursement for the 2009–2010 school year. Plaintiffs object to this finding on the grounds that Defendant violated the procedural requirements of the IDEA and failed to provide a FAPE.

>*1.      The 2009–2010 Proposed IEP Did Not Violate the Procedural Requirements of the IDEA*

"A school board complies with the IDEA's procedural obligations if the board affords parents of a child with a disability an adequate opportunity to participate in the development of the student's IEP." *A.E. by and Through his Parents and Next Friends, Mr. and Mrs. E. v. Wesport Bd. of Educ.*, 463 F. Supp. 2d 208, 216 (D. Conn. 2006) (citing *Cerra*, 427 F.3d at 192). However, while the IDEA affords parents an opportunity to participate in a PPT, "they do not have the power to veto or dictate the terms of an IEP." *J.C. v. New Fairfield Bd. of Educ.*, No. 3:08-cv-1591 (VLB), 2011 WL 1322563, at *16 (D. Conn. Mar. 31, 2011) (*"*[While] parental participation means something more than mere presence . . . . the parental participation requirements do not equate to a mandate for the provision of recommended services, if the services that are otherwise being provided constitute a FAPE.*"*) Jane Doe claims she was barred from meaningful participation in the June 17, 2009 Planning

and Placement Team ("PPT"), and that Defendant "unilaterally created" the 2009–2010 IEP without properly crediting the recommendations of the PPT participants.

In developing Plaintiff's 2009–2010 IEP, Defendant convened a PPT, which Jane Doe attended and at which several of John Doe's instructors gave recommendations as to his educational needs for the next school year. Courts in this district have held that even where a school district develops an IEP before considering the student's evaluations at a PPT, "[t]his does not suffice to establish a procedural violation [because the] IDEA simply requires the school district to *review* evaluation results in developing an IEP." *Brennan*, 531 F. Supp. 2d at 274. Here, Defendant reviewed John Doe's evaluations and considered Jane Doe's input at the June 17, 2009 PPT. Giving due deference to the hearing officer's findings, *M. H. v. New York City Dept. of Educ.*, 685 F.3d 217, 244 (2d Cir. 2012) (holding in an IDEA case that "the standard for reviewing administrative determinations requires a more critical appraisal of the agency determination than clear–error review . . . but . . . nevertheless[] falls well short of complete *de novo* review." (alterations in original) (internal quotation marks omitted)), the record establishes that Defendant reviewed John Doe's evaluations and provided Jane Doe with an opportunity to participate in the PPT, and thus the 2009–2010 IEP did not violate the procedural requirements of the IDEA. Plaintiff's objection as to this portion of the Recommended Ruling is overruled.

### 2. *The Proposed 2009–2010 IEP Provided Plaintiff a FAPE*

"Implicit in the congressional purpose of providing access to a 'free appropriate public education' is the requirement that the education to which access is provided be sufficient to confer some educational benefit upon the handicapped child." *Bd. of Educ. of Hendrick Hudson Central School Dist. v. Rowley*, 458 U.S. 102, 199 (1982). The requirement

to provide a FAPE is satisfied "by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Id.* at 203. However, the IDEA does not require "the furnishing of every special service necessary to maximize each handicapped child's potential." *Id.* at 199. The Supreme Court in *Rowley* cautioned that "courts lack the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy," *id.* at 208, and therefore must not "substitute their own notions of sound educational policy for those of the school authorities which they review." *Id.* at 207.

In the Recommended Ruling, Magistrate Judge Margolis found that Defendant's proposed 2009–2010 IEP was sufficient to provide a FAPE to John Doe, giving deference to the hearing officer's evaluation of the record. Plaintiff's object to this finding, arguing that the hearing officer's decision is not entitled to deference because it was poorly reasoned and failed to credit testimony from Plainitff's witnesses regarding John Doe's educational needs. However, the hearing officer referred to the testimony of several of Plaintiff's witnesses in her findings of fact. (*See, e.g.*, Admin. Rec. at 0167.) The hearing officer also noted that although Defendant's proposed 2009–2010 placement may not have provided the small class size recommended by Dr. Kemper, "Niantic Center School is small and staffed with a highly qualified special education teacher." *(Id.* at 0170.) The hearing officer found that "[t]he Board has qualified teachers in the upper levels which SSA does not. Hence, the Board may be in a better position than SSA to accommodate the areas in which the Student excels." (*Id.* at 168.) Thus, the hearing officer's decision was well–reasoned, taking into account all of the evidence in the administrative record, and as such Magistrate Judge Margolis properly gave deference to the decision.

9

In addition to the findings mentioned above, the proposed 2009–2010 IEP provided for reading instruction based on Orton–Gillingham principles, speech language therapy, and a case manager to coordinate the services John Doe was receiving, all of which comported with Dr. Kemper's recommendations at the PPT. (*Id.* at 2188.) The proposed 2009–2010 IEP met many of the recommendations from Plaintiff's consultants, and in some areas provided benefits John Doe would not have received if he remained at SSA. In light of these facts, it would be inappropriate for the Court to substitute its own judgment on the most appropriate methodology to pursue for John Doe's education. Thus, the Court agrees with Magistrate Judge Margolis's decision to uphold the administrative finding that the 2009–2010 IEP was sufficient to provide a FAPE to John Doe, and Plaintiff's objection to this finding is overruled.

    C.    The 2010–2011 School Year

        *1.*    *Defendant Denied Plaintiff a FAPE by Failing to Prepare an IEP for the 2010–2011 School Year*

The IDEA requires a school district to review a student's IEP "not less frequently than annually," and to revise the IEP as appropriate. 20 U.S.C. § 1414(d)(4)(A)(i)–(ii); *see also* 20 U.S.C. § 1414(d)(1)(a)(i)(VIII) (an IEP shall be "updated annually"). The hearing officer found that "the Board has not conducted an annual review, proposed a program, or held a PPT for the 2010–2011 school year," (Admin Rec. at 0168), but did not opine as to whether Defendant provided Plaintiff a FAPE in the 2010–2011 school year. However, in the Recommended Ruling, Magistrate Judge Margolis found that Defendant failed to provide Plaintiff a FAPE for the 2010–2011 school year, based on its failure to convene a PPT and prepare a 2010–2011 IEP. Defendant objects to this finding, arguing that because John Doe

10

was unilaterally placed outside of the district, and because Jane Doe's actions indicated that she had no intention of returning John Doe to the East Lyme Public School system, Defendant had no further obligation to prepare an IEP.

Defendant relies primarily on a district court case from outside of this circuit to show that when a student is unilaterally placed in private school outside of the school district, the school district is not obligated to continue preparing IEPs. In *L.G. and E.G. v. Wissahickon School District*, Civil Action Nos. 06-0333, 06-3816 (NLS), 2011 WL 13572, at *11 (E.D.P.A. Jan. 4, 2011), the court held that when a student's parents rejected the school board's offer of FAPE and unilaterally enrolled him in private school, the board was not obligated to continue to develop an IEP. The court stated that the obligation to prepare an IEP was only triggered when the student's parents informed the school board that they would be re–enrolling their child in public school. *Id.* at *11 ("Because Wissahickon developed and was prepared to implement an IEP at all times required by IDEA, there was no violation of IDEA's procedural requirements.")

However, in a case with similar facts from the District of Connecticut, the district court determined that failure to prepare an IEP for a student who had been unilaterally placed in private school was a violation of the IDEA. *See Plainville Bd. of Educ. v. R.N.*, 3:09-CV-241 (RNC). 2012 WL 1094640 (D. Conn. Mar. 31, 2012). In *R.N.* the defendant's parents rejected the school board's proposed placement and unilaterally enrolled their son in a private school for the 2008–2009 school year. Because the defendant's parents refused to consent to a reevaluation of their son, the school board never developed an IEP for the 2008–2009 school year. Nevertheless, the court held that because an IEP had not been developed, "[u]nless the Board provides an adequate defense, then, a finding that plaintiff

11

failed to provide FAPE for the school year is proper." *Id.* at *11. The court further determined that the board did not have a right to reevaluate the student, and that therefore the parents' refusal to consent to the reevaluation was not an adequate defense for failing to develop an IEP. *Id.* Thus, there is case law in this circuit to support the conclusion that a school district has a continuing responsibility to develop an IEP even after a student has been parentally placed in private school. Furthermore, SSA was John Doe's accepted placement under the terms of his December 18, 2008 IEP, and thus this case is distinguishable from *Wissahickon*, where the student's parents unilaterally removed him from his public school placement and enrolled him in private school.

The Supreme Court has recognized that "a school district's failure to propose an IEP of any kind is at least as serious a violation of its responsibilities under the IDEA as a failure to provide an adequate IEP." *Forest Grove School Dist. v. T.A.*, 557 U.S. 230, 239 (2009). However, Defendants claim that because Jane Doe did not request an IEP for the 2010–2011 school year, and because she showed no interest in returning to East Lyme public schools, the failure to provide at 2010–2011 IEP does not amount to a failure to provide a FAPE. The Second Circuit has held that where parents had unilaterally placed a student in private school and there was "no suggestion in the record that the [parents] would have altered their placement decision had their challenges to the IEPs been resolved in a more timely fashion," procedural violations in the administration of the IEP did not arise to a violation of the IDEA. *Grim v. Rhinebeck Central School Dist.*, 346 F.3d 377, 382 (2d Cir. 2003). Defendants argue that Jane Doe would not have accepted any placement other than SSA, and that therefore Plaintiff is not entitled to reimbursement for any procedural violation committed by not developing a 2010–2011 IEP.

12

Defendants also cite *Carmel Central School Dist. v. V.P. ex rel. G.P.*, 373 F. Supp. 2d 402, 416 (S.D.N.Y. 2005) to support the proposition that parental reimbursement for a violation of the IDEA is not required where parents "never had the slightest intention of allowing the child to be educated in the public school." In *V.P.*, the court found that the parents had not given the school district "a realistic opportunity to provide the [student] with a FAPE before they unilaterally placed her in a private school." *Id.* In this case, however, Jane Doe participated in her son's PPTs and worked with Defendant to come to an agreement on SSA as John Doe's placement for the 2008–2009 school year. Although Plaintiff did not formally request an IEP for 2010–2011, she remained in contact with Defendant by continuing to send John's evaluations and requests for reimbursement. (*See* Admin. Rec. at 1162 (August 15, 2010 letter from Jane Doe to Defendant stating: "In the absence of being offered an IEP for a FAPE for the 2010–2011 school year, I will be providing my son with placement at [SSA] beginning September 1, 2010 with related services.").) Furthermore, the hearing officer rejected Defendant's argument in its motion to dismiss that it was not responsible for John Doe's education during the 2010–2011 school year because he had been enrolled in an out–of–district private school since 2008. (*See id.* at 69, 224–34.) By failing to convene a PPT for the 2010–2011 Defendant denied Jane Doe the opportunity to participate in the development of her son's IEP, and violated Plaintiff's right to a FAPE. Defendant's objection to this portion of the Recommended Ruling is thus overruled.

### 2. *Plaintiff's Placement at SSA Was Not Adequate To Meet His Needs*

Once a court has determined that a procedural or substantive violation of the IDEA has occurred, it must still evaluate whether "the private schooling obtained by the parents

is appropriate to the child's needs," before it may order reimbursement. *Cerra*, 427 F.3d at 195. The hearing officer determined that:

> [E]ven if the Board's program was inappropriate, SSA provides no special education services whatsoever, does not implement the IEP, and the teachers are not special education certified. The student was routinely removed from SSA at noon on Mondays, and from 11:30 a.m.–2:00 p.m. on Thursdays. Further, he had to endure transitions on Thursdays which impacted the Student at various times and degrees. On Mondays, he was removed from the School and wholly missed computer instruction, social studies, and art. The only benefit to the Student is the small class size.

(Admin. Rec. at 0174.) In the Recommended Ruling, Magistrate Judge Margolis upheld this determination. Plaintiff now objects that the placement at SSA, plus related services, was adequate to meet John Doe's needs.

The Second Circuit has held that a private placement that is adequate to meet a student's needs is one that is "likely to produce progress, not regression." *Gagliardo v. Arlington Central School Dist.*, 489 F.3d 105, 112 (2d Cir. 2007). However, in *Gagliardo*, the court went on to caution that, "even where there is evidence of success . . . [a] unilateral private placement is only appropriate if it provides education instruction *specifically* designed to meet the *unique* needs of the handicapped child." *Id.* at 115 (internal quotation marks omitted) (emphasis in original). In this case, the hearing officer concluded that the only benefit John Doe received from SSA was small class sizes (Admin. Rec. at 0174), and determined that SSA could not provide John Doe with advanced instruction in the areas in which he excelled (*id.* at 0168). SSA provided no special education services to meet John Doe's needs and he was therefore required to miss significant portions of his substantive curriculum in order to receive related services. (*Id.* at 0174). Furthermore, the hearing officer also noted that there was some evidence of regression while John was at SSA, in that

14

he did not make gains in written expression. (*Id.* at 165.) As the Supreme Court has noted, district courts are required to give deference to a hearing officer's determination of educational policy issues. *See Rowley*, 458 U.S. at 207–08. Thus, the Court will not disturb the hearing officer's determination that Plaintiff's placement at SSA was inadequate to meet his need, and therefore Plaintiff is not entitled to reimbursement. Plaintiff's objection to this portion of the Recommended Ruling is overruled.

III.     Conclusion

For the reasons discussed above, Defendant's Motion [Doc. # 47] for Summary Judgment is GRANTED in part, in that the 2009–2010 proposed IEP was adequate to provide a FAPE, and DENIED in all other respects.  Plaintiff's Motion [Doc. # 38] for Summary Judgment is GRANTED in part, in that Defendant violated Plaintiff's right to a FAPE in 2010-2011 and violated Plaintiff's stay–put right, and DENIED in all other respects.  The Recommended Ruling [Doc. # 71] is adopted as modified.

Pursuant to footnote 54 of the Recommended Ruling, if the parties are unable to agree on the scope or value of the related services to be reimbursed under the 2008–2009 IEP for Defendant's violation of Plaintiff's stay–put right, Plaintiff will file a memorandum of law quantifying these amounts on or before October 12, 2012, with appropriate supporting affidavits and documents.  Defendant may file a memorandum in opposition on or before October 24, 2012, and Plaintiff may file a reply brief on or before October 30, 2012.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 21st day of September, 2012.