UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN DOE, by and through his parent, JANE DOE *Plaintiffs,* *v.* EAST LYME BOARD OF EDUCATION *Defendant.* | Civil No. 3:11cv291 (JBA) March 27, 2019 |

### RULING ON PLAINTIFFS' SECOND MOTION FOR ATTORNEYS' FEES

Pursuant to 20 U.S.C. § 1415(i)(3), Plaintiffs move for an award of "at least" $489,528.83 for attorneys' fees and costs incurred in litigation in this Court and in the Second Circuit Court of Appeals through October 31, 2017. (Pls.' Second Mot. for Attorneys' Fees and Costs [Doc. # 263] at 1.) Defendant opposes, arguing that Plaintiffs are not entitled to an award of attorneys' fees. For the reasons that follow, Plaintiffs' Motion is granted with modification.

### I.     Background

The Court presumes the parties' familiarity with the underlying facts of this case. Plaintiffs filed a complaint against the East Lyme Board of Education in February 2011 to appeal the decision of an administrative hearing officer regarding Plaintiffs' Individuals with Disabilities in Education Act ("IDEA") claims. (*See* Compl. [Doc. # 1].) The parties' cross-motions for summary judgment were referred to Magistrate Judge Margolis, who issued a recommended ruling, ([Doc. # 71]), which this Court adopted with modification, (Ruling on Parties' Objs. to the Recommended Ruling [Doc. # 79].) Defendant's motion for summary judgment was granted in part "in that the 2009-2010 proposed IEP was adequate to provide a FAPE" but was denied "in all other respects." (*Id.* at 16.) Plaintiffs' motion for summary judgment was granted in part "in that Defendant violated Plaintiff's right to a FAPE in 2010-2011 and violated Plaintiff's stay-put right" and denied "in all

other respects." (*Id.*) The Court subsequently ordered Defendant to reimburse Plaintiffs the amount of $97,445 and entered judgment for Plaintiffs, (Ruling on the Parties' Objs. to the Recommended Ruling [Doc. # 101]; Amended J. [Doc. # 104]), which Defendant appealed, (Not. of Appeal [Doc. # 111]).

The Second Circuit "affirm[ed] in most respects" the judgment entered for Plaintiffs, but "vacate[d] and remand[ed] for entry of judgment in favor of the Does for the full value of services that the Board was required to fund under the stay-put provision." *Doe v. East Lyme Bd. of Educ.*, 790 F.3d 440, 445 (2d Cir. 2015). The Second Circuit "le[ft]" to this Court "the mechanics of structuring the compensatory education award" and the determination "whether compensatory education should be limited to the kinds of services specified in the amended 2008-2009 IEP, or encompass analogous educational services appropriate to the Student's current needs." *Id.* at 457.

On remand, the Court held a three-day bench trial and entered its subsequent Memorandum of Decision in June 2017, ultimately ordering the Defendants to reimburse Plaintiffs in the amount of $47,968.02, plus interest, and to place $192,066.02 for compensatory education in an escrow account. (Mem. of Decision [Doc. # 245]; Amended Final J. [Doc. # 284].)

In May 2014, Plaintiffs moved for Attorneys' Fees and Costs, ([Doc. # 125]), which the Court "denied without prejudice to renew . . . no later than fourteen (14) days after the date a ruling on the merits of the cross-appeals by the Second Circuit is entered on the docket of this district court," (Ruling on Pls.' Mot. for Attorneys' Fees [Doc. # 158] at 5). In November 2017, Plaintiffs renewed their request for attorneys' fees. (Pls.' Second Mot. for Attorneys' Fees.)

## II.    Discussion

Any "parent of a child with a disability" who sues under the IDEA and who qualifies as a "prevailing party" may, in the court's discretion, be awarded "reasonable attorneys' fees." 20 U.S.C. 1415(i)(3)(B)(i).

### A. Prevailing Parties

"The legal standard for determining 'prevailing party' status in an IDEA attorney's fees action is the same as that governing the award of attorney's fees in civil rights litigation pursuant to 42 U.S.C. § 1988." *P.O. ex rel L.T. v. Greenwich Bd. of Ed.*, 210 F. Supp. 2d 76, 81 (D. Conn. 2002) (citing cases). "Under this standard, a party 'may be considered a 'prevailing party' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.'" *Id.* (citing *G.M. v. New Britain Bd. of Ed.*, 173 F.3d 77, 81 (2d Cir. 1999)). "Thus, the linchpin of the analysis is to determine the degree of success obtained by comparing the relief sought by the plaintiff and the relief actually obtained." *Id.* (citing *Christopher P. v. Marcus*, 915 F.2d 794, 804 (2d Cir. 1990)).

Courts must not demand "perfect congruence between the relief requested and the relief obtained" to award attorneys' fees. *G.M. v. New Britain*, 173 F.3d at 83. Rather, courts should apply a "generous formulation" of the prevailing party test, considering whether: i) plaintiff "obtained relief on a significant claim in the litigation"; ii) that relief "effected a material alteration" in plaintiff's "legal relationship with the defendant"; and iii) such material alteration is "not merely technical or de minimis in nature." *P.O. ex rel L.T. v. Greenwich*, 210 F. Supp. 2d at 82 (citing *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-93 (1989); *G.M. v. New Britain*, 173 F.3d at 83).

Plaintiffs argue that they are prevailing parties in this litigation because they obtained relief on significant claims during three phases of this litigation: prior to their appeal to the Second Circuit ("District Court Phase 1"), on appeal ("Appellate Phase"), and following that appeal ("District Court Phase 2"). Defendants apparently concede that Plaintiffs were prevailing parties during the District Court Phase 2 stage of this litigation, (see Defs.' Opp. to Pls.' Mot. [Doc. # 272] at 6-7), but dispute Plaintiffs' status as prevailing parties as to District Court Phase 1 and the Appellate Phase because, Defendants argue, Plaintiffs "did not obtain relief on a significant claim in either" phase and because "there was no material alteration in Plaintiffs' legal relationship with the board" during those stages. (Id. at 6.)

### i.    District Court Phase 1

Plaintiffs contend that they "achieved relief on at least two significant claims in this litigation" during District Court Phase 1: 1) "an order and judgment requiring the Board to pay them a significant sum of money ($97,445.00) as reimbursement for the Board's violations of John's stay-put rights" and 2) "an adjudication that the Board continues to be responsible for providing John with a FAPE, despite his unilateral placement in a private school outside of East Lyme." (Pl.'s Mem. Supp. Mot. for Atty. Fees [Doc. # 264] at 5.)

### a.  Stay-Put Violation

As to the award for the violation of John's stay-put rights, Defendants claim that Plaintiffs cannot be deemed prevailing parties on that basis because they "did not seek reversal of" the hearing officer's denial of stay-put relief in their Complaint. (Defs.' Opp. at 9.) Because, Defendants argue, "Plaintiffs had abandoned their claim for stay-put relief in the initial administrative due process proceedings and in their appeal to this Court[,] . . . it cannot be said that stay-put

reimbursement was a significant claim raised by Plaintiffs at the District Court Phase 1 proceedings." (*Id.*)

Plaintiffs respond that although stay-put reimbursement was not featured in their Complaint, they did ask the Court to "grant relief of the general type they ultimately received (reimbursement, compensatory education)." (Pls.' Reply [Doc. # 275] at 3.) Plaintiffs also argue that they "clearly raised their stay-put claim on summary judgment" and that the "parties briefed the issue extensively to this Court during the first phase of this litigation," leading the Second Circuit to note on appeal that Plaintiffs "'prevailed below' on the stay-put claim." (*Id.* (quoting *Doe v. East Lyme*, 790 F.3d at 447).)

Defendants also claim that this Court's decision to award stay-put reimbursement "was not a decision on the merits of the parties' claims that altered their relationship because this Court (and the Second Circuit) determined that the placement of the student at SSA by the Parent was inadequate to meet the Student's needs and, therefore, plaintiff was not entitled to reimbursement for that placement." It is unclear to the Court why the denial of *tuition* reimbursement would alter the impact of the Plaintiffs' success as to the separate award of stay-put reimbursement for *other services*, and Plaintiffs' status as prevailing parties will not be negated on that basis.

Plaintiffs' claim for stay-put relief was a significant one which was litigated thoroughly during District Court Phase 1. (*See, e.g.,* Rulings on Parties' Objs. to Rec. Rulings [Docs. # 79, 101] (addressing parties' objections to and determining Plaintiffs' award for stay-put violations).) Those efforts produced a significant monetary award for Plaintiffs, producing a material alteration to Defendants' legal obligations to Plaintiffs which, at $97,445, is clearly not merely technical or de minimis. Therefore, Plaintiffs are prevailing parties as to their claim for stay-put relief during District Court Phase 1.

### b. FAPE Violation

As to the Court's decision that Defendants violated John's right to a FAPE, Defendants argue that Plaintiffs are not prevailing parties because "Plaintiffs' claim of a denial of FAPE for the 2010-2011 school year was not a significant claim." (Defs.' Opp. at 7.) Defendants' cite Magistrate Judge Margolis's recommended ruling, which "recognized" that the "'primary issue and focus of [Plaintiffs'] proceedings was whether SSA was an appropriate educational placement for the student," not whether John's FAPE rights were violated. (*Id.* (citing Recommended Ruling [Doc. # 71] at 16, n.17 (alteration in Defs.' Opp.)).) Because, Defendants argue, the appropriateness of John's placement at SSA was the "primary issue" raised by Plaintiffs in their appeal to this Court of the hearing officer's decision, the FAPE claim on which Plaintiffs succeeded was not sufficiently significant to confer upon Plaintiffs prevailing party status. Especially under a "generous formulation" of the prevailing party test, Defendants' argument here is unconvincing because a claim need not have been the Plaintiffs' "primary" claim in order for it to have been a "significant claim in the litigation."

Defendants also argue that Plaintiffs are not prevailing parties in District Court Phase 1 as to the FAPE violation because Plaintiffs achieved "no relief" from the finding of that violation and because the Court's finding as to that violation "does not constitute a material alteration or a judicially sanctioned change in the legal relationship between the parties" as Defendants' obligation to develop and implement an IEP for John "arises from the IDEA's statutory mandate and is not part of a judicial remedy." (Defs.' Opp. at 7-8 (quoting *J.C. v. Reg'l Sch. Dist. 10*, 278 F.3d 119, 125 (2d. Cir. 2002)).) Plaintiffs respond that this Court's finding of a FAPE violation "had (and continue[s] to have) long-term consequences: instead of washing its hands of John, as the Board strove mightily to do, it was required to continue holding Team meetings, performing

evaluations, developing IEPs, proposing placements, and performing all of the other obligations that IDEA imposes on a district with regard to eligible students." (Pls.' Reply at 5.) Plaintiffs also respond that, because they were "required to seek judicial intervention to compel" Defendants to comply with their obligation to provide John a FAPE, the Court's ruling constituted a material alteration of the parties' legal relationship, regardless of the underlying statutory nature of Defendants' obligation. (*See id.*)

Defendants cite *J.C. v. Regional School Dist. 10, Bd. of Educ.*, 278 F.3d 119 (2d Cir. 2002), in support of their argument that Plaintiffs are not prevailing parties because Plaintiffs' entitlement to a FAPE arises from the IDEA and not from any judicial alteration of the parties' relationship. Following notice of the scheduling of an expulsion hearing, "J.C.'s parents, through their attorney, sent a letter to the Board seeking both a [planning and placement team] and a due process hearing." 278 F.3d at 122. The school "responded by cancelling the expulsion hearing and scheduling PPT meetings to address these requests," eventually terminated the hearing, and "drafted an IEP that provided for all the other relief requested in the" letter. *Id.* Both parties then agreed

> that no issues remained to be determined and jointly requested a hearing for the sole purpose of adopting the PPT's results as an official decision and order. At the hearing . . . , however, the Board changed its mind, fearing that transforming the results of the PPT into an official decision would expose the Board to liability for attorneys' fees. The hearing officer declined to adopt the PPT's results as an official order . . . and the hearing officer issued a final written decision dismissing the hearing as moot.

*Id.* J.C.'s parents subsequently filed suit in district court, seeking only attorneys' fees from the Board under the IDEA and the Rehabilitation Act of 1973. *Id.* The district court awarded attorneys' fees to plaintiff, but on appeal the Second Circuit held that J.C. was not entitled to attorneys' fees under the IDEA. *Id.*

The Second Circuit's holding in *J.C.* rested on the Supreme Court's opinion in *Buckhannon Board and Care Home, Inc. v. West Va. Dept. of Health and Human Res.*, 532 U.S. 598 (2001), which "held that, to be a prevailing party, one must either secure a judgment on the merits or be a party to a settlement agreement that is expressly enforced by the court through a consent decree" and "expressly rejected the catalyst theory as a predicate for recovering attorneys' fees," under which theory parties were awarded attorneys' fees "where even though the litigation did not result in a favorable judgment, the pressure of the lawsuit was a material contributing factor in bringing about extrajudicial relief." *J.C.*, 278 F.3d 123 (internal citations and quotations omitted). Because J.C. did not secure a judgment on the merits and was not party to a settlement agreement expressly enforced by the court through a consent decree, the Second Circuit held that he was not a prevailing party and was not entitled to attorneys' fees under the IDEA. *Id.* at 124-125. Unlike in *J.C.*, this Court's finding that Defendants denied John a FAPE for the 2010-11 school year is clearly a "judicial remedy" and Plaintiffs here did secure a judgment on the merits following extensive litigation. Therefore, Defendants' analogy to that case is unconvincing.

Because Plaintiffs obtained relief on this significant claim which materially altered Defendants' legal obligation to Plaintiffs in a way that is not merely technical, Plaintiffs are also prevailing parties as to the FAPE violation during District Court Phase 1.

### ii.    Appellate Phase

Plaintiffs argue that they achieved relief on additional significant claims during the Appellate Phase: 1) "a ruling affirming this Court's conclusion that, due to the Board's stay-put violations, the Does were entitled to reimbursement for those stay-put services that Ms. Doe had provided"; 2) "a ruling that John was also entitled to compensatory education, to make up for those services that the Board owed John, but that Ms. Doe had not been able to provide"; and 3)

"affirmance of this Court's ruling that the Board remained responsible for John's special education on a prospective basis." (*Id.* at 5-6.)

Defendants' argument that Plaintiffs were not prevailing parties during the Appellate Phase mirrors their arguments regarding District Court Phase 1. (*See* Defs.' Opp. at 7-10.) In the absence of any additional persuasive arguments or authority, and in light of Plaintiffs' success on appeal to the Second Circuit on significant claims in this litigation, the Court finds that Plaintiffs are prevailing parties as to the Appellate Phase as well.

### iii.     District Court Phase II

Finally, Plaintiffs argue, and Defendants appear not to dispute, that they prevailed on additional significant claims on remand to this Court during District Court Phase 2, including: 1) "obtaining much more, in monetary terms, than they had originally obtained on summary judgment . . . requiring a total of $134,000.04 in reimbursement" and "requiring the Board to place an even greater sum -- $203,278.10 – into escrow for John's benefit"; and 2) an order requiring "the Board to pay Ms. Doe prejudgment interest on the amounts she expended." (*Id.* at 6.) Plaintiffs conclude that "the total value of the relief obtained" in this case is "at least $240,034.04, plus prejudgment interest" and that therefore they are "prevailing parties who merit a fee award." (*Id.*) The Court agrees that Plaintiffs are prevailing parties and will award reasonable attorneys' fees pursuant to the IDEA.

### B. Reasonable Fee Award

Attorneys' fees awarded pursuant to the IDEA must be "reasonable" and "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(B)-(C). "Reasonable attorneys' fees under the IDEA are calculated using the 'lodestar' method, 'whereby an attorney fee award is derived by multiplying

the number of hours reasonably expended on the litigation by a reasonable hourly rate.'" *Streck v. Bd. of Educ. of East Greenbush Central Sch. Dist.*, 408 F. App'x 411, 415-416 (2d Cir. 2010) (quoting *A.R. ex rel R.V. v. New York City Dept. of Ed.*, 407 F.3d 65, 79 (2d Cir. 2005)). Courts may also consider the twelve factors[1] set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), in determining the reasonableness of attorneys' fees. *See A. v. Hartford Bd. of Educ.*, 2017 WL 187138, at *2 (D. Conn. Jan. 17, 2017).

### i.    Hours

Plaintiffs request attorneys' fees for both Kotin, Crabtree & Strong ("KC&S"), which "acted as lead counsel in the case" and for local counsel, first the Gallagher Law Firm ("GLF") and then Kennedy, Johnson, Schwab & Roberge, LLC ("KJSR"). (Pls.' Mem. at 8.) Because they "recognize" that they "did not succeed on all issues in the district court litigation prior to May 1, 2014 or in the appellate litigation, and that the amount of fees awarded will generally be reduced to reflect the extent of the success the plaintiff achieved," Plaintiffs seek payment for only 1,751.1 of 2,299.4 total hours billed by KC&S between January 11 and October 31, 2017 for this litigation. (*Id.* at 9-11.) Plaintiffs seek payment for all hours billed by GLF and KJSR: 43.5 hours for GLF and 18.8 hours for KJSR.

---

[1] The twelve *Johnson* factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 186 n.3 (2d Cir. 2008) (citing *Johnson*, 488 F.2d at 717-719).

Attorney Eileen Hagerty billed the "majority" of the KC&S hours, with "small amounts of services" performed by other partners, "primarily in connection with moot court preparation for oral argument in the Second Circuit" and additional work performed by several associates at various times, including work performed by associate Michelle Moor "during a period of intense work relating to the parties cross-motions for summary judgment," "a relatively small amount of work" performed by associate Melanie Jarboe "[a]fter Ms. Moor ceased working at KC&S," and then "primar[y]" assistance from associate Alicia M. P. Warren (formerly Alicia M. Parmentier) from November 2015 through October 2017. (*Id.* at 10.) KC&S also enlisted legal research services of "various law student clerks" and services of KC&S paralegal Karen Lynch. (*Id.*)

Plaintiffs argue that "[t]hese expenditures of time are reasonable in the circumstances of this case," which was "factually detailed, legally complex, and vigorously contested" and which took place in "eight phases" in the district court and five phases of appellate litigation. (*Id.* at 10.) Plaintiffs also note that the "firms made conscious efforts to prevent duplication of effort," with KC&S performing "all legal research on special education issues and all review of the administrative record," doing "all the drafting in connection with the plaintiffs' substantive motions," "perform[ing] all activities" on appeal, "where local counsel was not required," attending Court hearings and trial, and taking responsibility for "almost all contact with the client, with the Court, and with opposing counsel." (*Id.* at 8-9.) The role of local counsel was "primarily to advise with regard to local court rules and practices." (*Id.* at 9.) Plaintiffs' firms "also sought to address any perceived duplication of effort by performing some services without charge" and by charging "very low rate[s]" for some work. (*Id.*)

Plaintiffs explain their request for payment on only 1,751.1 of KC&S's 2,299.4 billed hours as a "good faith effort to divide the fees according to the issue involved" in recognition of having

achieved success only on certain claims. (*Id.* at 11.) "This figure was calculated by taking the amounts of time that are clearly identifiable as relating to issues on which the Does succeeded, plus all of GLF's and KJSR's time and half of the time KC&S spent on issues that 'involve a common core of facts or [are] based on related legal theories,'" based on "counsel's judgment [that] it is fair and reasonable to attribute at least half of" the time spent on "common core" issues "to the issues on which plaintiffs prevailed." (*Id.* quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).)

### a. Fee Parity

Defendants argue that the "total hours spent by Plaintiffs' law firms . . . were excessive, unnecessary, and/or unwarranted." (Defs.' Opp. at 24.) In support of this argument, Defendants note that the "grand total" number of hours billed by Plaintiffs' firms (2361.60 hours) throughout this litigation is significantly greater than the "grand total" number of hours billed by Defendants' firm (1,140.10 hours) throughout this litigation. (*Id.* at 25.) Because, Defendants argue, "opposing law firms fight[] the same fights, hav[e] to file and/or oppose the same types of pleadings, motion and briefs, hav[e] to participate in the same conferences and oral arguments and hearing dates, and otherwise hav[e] to perform similar tasks representing their clients in all facets of these proceedings, [they] would likely be expected to expend similar hours in doing so." (*Id.*) Defendants argue that a comparison of the number of hours billed by attorneys for each side in this litigation makes clear that Plaintiffs request for reimbursement is unreasonable. They urge the Court to further reduce "the 1,751.10 hours' worth of attorneys' fees requested by Plaintiffs" by "at least 35% . . . to more appropriately reflect the 1,140.10 hours worked by the Board's law firms in this matter." *Id.* at 26.) A 35% reduction in the hours for which Plaintiffs request reimbursement would result in a fee application for 1,138.22 hours, just under the 1,140.10 hours billed by Defendants' counsel.

Plaintiffs respond that "as the party with the burden of proof, [they] had much more to do to marshal the facts and bring their case (both on summary judgment and at the evidentiary hearing) than the Board did." (Pl.'s Reply at 9.)

In support of their argument that Plaintiffs' hours should be reduced following comparison to Defendants' hours, Defendants cite this Court's ruling in *Serricchio v. Wachovia Secs., LLC*, 258 F.R.D. 43 (D. Conn. June 17, 2009). In considering the appropriateness of subpoenas served on opposing counsel seeking production of their billing records in connection with an attorneys' fees motion, this Court found that "the better approach is to permit discovery of an opponent's billing records and then, in comparing the work performed by each side's attorneys, regard differences in the parties' burdens and incentives as relevant to the weight of the records, not whether the records are discoverable." *Serricchio*, 258 F.R.D. at 45. Defendants argue that *Serricchio* supports their position that Plaintiffs' attorneys' hours should be reduced by at least 35% based on comparison to Defendants' attorneys' hours.

"There may be instances when district courts will want to consider—among the myriad of other factors—the fees charged by opposing counsel" in determining an appropriate fee award. *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1059 (2d Cir. 1989). Among those other factors to be considered are, for example, "the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics)." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 184 (2d Cir. 2008).

Defendants' argument for a 35 percent reduction in Plaintiffs' counsel's hours—to 1,138.22 hours, nearly identical to Defendants' counsel's 1,140.10 hours—"to more appropriately reflect the . . . hours worked by the Board's law firms" is effectively a request for "fee parity," but "the

prevailing market rate test does not mandate equal fees for opposing counsel." *Chambless*, 885 F.2d at 1059. Moreover, Defendants fail to acknowledge any possible variety in "the resources required to prosecute the case effectively" and make no arguments as to why Plaintiffs' burdens at many stages of this litigation should not result in a higher number of reimbursable billable hours. Because Defendants' request for a 35% reduction in the hours for which Plaintiffs seek reimbursement appears to be merely a disguised attempt at "fee parity," and in recognition that Plaintiffs seek reimbursement for significantly less hours than were actually billed throughout this litigation, the Court declines to impose Defendants' requested reduction.

### b. Special Education Research

Defendants also argue that several specific areas of Plaintiffs' counsel's billable hours are excessive. First, Defendants argue that "many of the hours spent on researching various issues are clearly excessive, particularly in light of Attorney Hagerty's claimed expertise in the area of special education law." (Defs.' Opp. at 26.)

Defendants argue that the 149.9 hours of research "billed on the issue of stay-put" and the 16.9 hours of research "billed on the issue of the failure to develop an IEP" are "clearly excessive, especially because the questions at issue, concerning stay-put and annual review and development of an IEP are common questions in special education cases and, therefore, are hardly novel or difficult." (*Id.* at 26-27.) Defendants argue that a "significant reduction of these hours, is therefore[] necessary." (*Id.* at 27.) Defendants also note that "56.0 hours of research for the purported common-core matters were billed for such issues described as, *inter alia*, 'special education case law;' [']standard of review . . . for special education appeal;' 'evidentiary standards'; 'unilateral placements'; 'special education regulations'[;] 'decisions of hearing officers'; 'Second Circuit IDEA cases'; 'FAPE'; 'compensatory education'; and 'IDEA reimbursement.'" (*Id.*) Defendants argue that

those hours "are clearly excessive, especially because the questions at issue are common questions in special education cases and, therefore, are hardly novel or difficult" and that "therefore, a significant reduction for these hours is necessary." Defendants argue specifically that these research hours are "excessive given Attorney Hagerty's claimed expertise in the area of special education law." (*Id.*)

Defendants also argue that "the amount of [] research time that was performed and billed by more than a dozen different law student clerks (and the multiple conferences billed pertaining to the same) was clearly excessive." (*Id.* at 27-28.) Defendants calculate that "law student clerks billed a grand total of **372.1** hours" in this case. (*Id.* at 28 (emphasis in original).) Attorney Hagerty represents that various law student clerks primarily provided "research assistance . . . after prior associate Michelle Moor had left KC&S's employ and before Ms. Warren arrived." (Aff. of Eileen M. Hagerty [Doc. # 265] ¶ 9.)

Plaintiffs respond that "a central issue in the case, the form of the remedy for its stay-put violations, involved a novel issue of law," necessitating additional research on top of Attorney Hagerty's experience in the special education field. (Pls.' Reply at 9.) Plaintiffs continue that Defendants "persisted in asserting meritless legal arguments, which the Does' attorneys needed to address specifically and to rebut," forcing the "Does' attorneys [] to research and brief all of these issues." (*Id.* at 9-10.)

The Court agrees with Defendants that in light of Ms. Hagerty's and her firm's experience in the field of special education, reimbursement for the many hours of legal research performed by law student clerks, presumably with significantly less experience in the field, is excessive. The Court therefore directs Plaintiffs to re-calculate their reimbursement request after reducing by 25% the number of hours of law student work for which they seek reimbursement. *See Kirsch v. Fleet*

*Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (to reduce hours that are "excessive, redundant, or otherwise unnecessary . . . the court has discretion to simply deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application" (internal quotations omitted).) In recognition that this litigation did involve novel issues of law and that Defendants bear, at least in part, responsibility for the variety of legal issues Plaintiffs' counsel was required to research, no additional reduction in the number of reimbursable research hours will be imposed.

### c.  Attorneys' Fees Motions

Defendants argue that Plaintiffs' counsel's "extraordinary **194.3** hours for time spent on preparing their two motions for attorneys' fees" is "entirely excessive and were not reasonably expended." (Defs.' Opp. at 28-29 (emphasis in original).) Defendants take issue particularly with the 101.3 hours spent drafting Plaintiffs' first motion for attorneys' fees at the conclusion of District Court Phase 1, "given the very limited success they achieved at that time." (*Id.* at 29.) Defendants also argue that the many hours spent drafting these motions "appear to be contrary to Attorney Hagerty's claimed expertise in special education law," especially in light of the 48.6 hours of research and 18 hours of preparation billed for the first attorneys' fees motion. (*Id.*) Defendants argue that Plaintiffs' request for an award of attorneys' fees for the hours spent preparing these motions "should be entirely denied, or if not denied, significantly reduced to reflect a reasonable number of hours." (*Id.*)

Plaintiffs respond that the time "spent on the Does' fee petitions was reasonable, particularly in light of the requirements that the petition be thorough and detailed, and that time be apportioned between successful and unsuccessful issues." (Pls.' Reply at 10.)

"[T]ime reasonably spent by plaintiff's attorneys in establishing their fee would be compensable." *Gagne v. Maher*, 594 F.2d 336, 344 (2d Cir. 1979). But district courts must "evaluate the costs of preparing" attorneys' fees motions must be "evaluate[d] . . . no differently from the costs of litigating the underlying case." *Valley Disposal, Inc. v. Central Vermont Solid Waste Management Dist.*, 71 F.3d 1053, 1059 (2d Cir. 1995). "*Gagne* seems to assume that, unless there are reasons to the contrary, motion costs should be granted whenever underlying costs are allowed," absent "some reasons" to "depart from this basic assumption." *Id.*

Plaintiffs' first motion for attorneys' fees was denied by Magistrate Judge Margolis "without prejudice to renew such motion no later than fourteen (14) days after the date a ruling on the merits of the cross-appeals by the Second Circuit is entered on the docket of this district court." (Ruling on Pls.' Mot. for Atty.'s Fees and Costs [Doc. # 158].) Plaintiffs incorporated the information provided to the Court in support of that motion in their instant second motion for attorneys' fees, presumably reducing the number of hours required to be billed on this second motion. (Pls.' Mem. at 2 n.2.) However, the Court agrees with Defendants that, especially in light of the 48.6 hours of research billed in support of Plaintiffs' first motion for attorneys' fees and given Attorney Hagerty's expertise in special education law, a reduction in the hours spent preparing the fee motions is appropriate. The Court therefore directs Plaintiffs to re-calculate their reimbursement request after reducing by 20% the number of hours spent preparing the fee motions for which they seek reimbursement.

### d. Statement of undisputed facts

Defendants argue that because, on summary judgment in an IDEA case, the "court is reviewing the administrative record and not discerning whether there are disputed issues of fact, no 56(a)1 Statement under the Local Rules is required." (Defs.' Opp. at 30.) Defendants contend

that this Court "agreed that such a statement is not necessary in this type of case during a telephone conference call with the parties on April 17, 2012." (*Id.*)

Plaintiffs respond that "Local Rule 56(a) requires such a statement to accompany all motions for summary judgment. The rule does not state any exception for summary judgment motions involving an administrative record. Moreover, in this case the Does submitted additional evidence pursuant to 20 U.S.C. §1415(i)(2)(C)(ii), which by definition was not part of the administrative record, and which the Local Rule 56(a)(1) statement discussed. In addition, it is clear from other reported cases that the parties often do file statements of undisputed facts in summary judgment cases involving administrative records under IDEA." (Pls.' Reply Supp. First Mot. for Attorneys' Fees [Doc. # 150] at 12 (citing cases).) Plaintiffs dispute Defendants' characterization of the Court's comments, explaining that "on April 17, 2012, three months after the Does had filed their Rule 56(a)(1) statement, the Court merely stated, in response to a question from the Board's prior counsel, that the Board was not required to file a similar statement. The Court expressed no opinion as to the propriety of the Does' having done so." (*Id.*)

Local Rule 56(a) clearly directs parties to submit such a statement and provides no exception for IDEA cases. Given that Plaintiffs submitted their Rule 56 Statement months before the Court's disputed remarks, and in the absence of any controlling caselaw which would have assured the Plaintiffs that they were not required to filed such a statement despite the clear directive of Local Rule 56(a), the Court will not reduce the Plaintiffs' award for time spent preparing that statement.

### e.  Other KC&S partners

Defendants argue that the "requested fees for time spent on these proceedings by 9 other partners at KC&S besides lead counsel, Attorney Hagerty" is "unnecessary." (Defs.' Opp. at 31.)

Specifically, Defendants dispute the "total of **86.7** hours of time spent by Attorney Mercier" and the "total of **32.8** hours of time spent by 8 of Attorney Hagerty's other partners, 'primarily in connection with moot court preparation for oral argument in the Second Circuit.'" (*Id.* (internal citations omitted).) Defendants argue that these hours were unnecessary "given Attorney Hagerty's repeated reference to herself as a 'highly experienced special education attorney.'" (*Id.*)

Plaintiffs respond that "KC&S partners other than Ms. Hagerty and Marie Mercier spent time primarily on moot court preparation for the appellate argument, which is a well-accepted and effective means of preparation." (Pls.' Reply at 10.) Attorney Hagerty explains that Attorney Mercier's hours were primarily spent "providing consultation and helping to develop arguments and strategy." (Hagerty Aff. ¶ 9.)

The Court recognizes the value of moot court preparation and consultation with other partners to develop legal strategy. However, especially in light of Attorney Hagerty's experience and the high number of additional partners whose time was billed on this case, the Court directs Plaintiffs to re-calculate their reimbursement request after reducing by 20% the number of other partners' hours for which they seek reimbursement.

### f. Local Counsel

Defendants contend that because of Plaintiffs' decision to hire out-of-state counsel, they are not entitled to reimbursement for local counsel's billable hours, travel to and from the district, or the costs of filing *pro hac vice* motions. "It was Plaintiffs' own choice to retain KC&S as lead counsel, whose attorneys are located in Massachusetts [and] are not admitted to practice in the District of Connecticut," and so, Defendants argue, Plaintiffs should bear the costs of that choice, "especially when attorneys with expertise in special education law are located in the District." (*Id.* at 32.) Defendants further contend that "[t]here is nothing in Plaintiffs' Motions to demonstrate

that work on this matter required any particular specialization or resources that could not be provided by counsel in this District." (*Id.*) Defendants argue that "[n]early all of the time for Attorneys Cox and Grandjean," who served as local counsel in this matter, "should be excluded as unnecessary" because those attorneys "acted exclusively in the role of local counsel and were not involved in any significant manner in these proceedings." (Defs.' Opp. at 31.)

A "district court may use an out-of-district hourly rate—or some rate in between the out-of-district rate sought and the rates charged by local attorneys—in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty of Albany*, 522 F.3d 182, 191 (2d Cir. 2008). Courts should presume, however, "that a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally." *Id.* That "presumption may be rebutted—albeit only in the unusual case—if the party wishing the district court to use a higher rate demonstrates that his or her retention of an out-of-district attorney was reasonable under the circumstances . . . ." *Id.* "To overcome that presumption, a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result. In determining whether a litigant has established such a likelihood, the district court must consider experience-based, objective factors." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 175 (2d Cir. 2009). "Among the ways an applicant may make such a showing is by establishing that local counsel possessing requisite experience were unwilling or unable to take the case." *Id.* (citing *In re Agent Orange Prod. Liability Lit.*, 818 F.2d 226, 232 (2d Cir. 1987)).

Defendants here apparently seek to extend the logic of *Arbor Hill*, which applies specifically to *hourly rates* charged by out-of-district counsel, to *all fees* which arguably result from Plaintiffs'

choice to hire out-of-district counsel, including payment of local counsel, hours spent traveling to the district, and fees incurred relating to *pro hac vice* admissions. They argue that because Plaintiffs acted unreasonably in hiring out-of-state counsel, no fees stemming from that choice should be reimbursed.

Plaintiffs respond that "[o]ut-of-state counsel was necessary because Ms. Doe could not find an in-state attorney to take her case." (Pls.' Reply at 10.) In support of that contention, Plaintiffs cite Attorney Hagerty's affidavit in support of their first fee motion, which states:

> When Ms. Doe first called me, I explained to her that I am not licensed to practice in Connecticut, and I suggested that she engage a Connecticut special education attorney. I understood from my discussions with her that she had tried but had not been able to find a Connecticut special education attorney to represent her.

(Aff. of Eileen M. Hagerty [Doc. # 127] ¶ 6.) But Plaintiffs provide no further detail or supporting documentation with regard to Ms. Doe's efforts to obtain in-state counsel or her inability to do so. Ms. Doe has filed no affidavit detailing her efforts, and no documentation of those efforts has been provided to the Court beyond Attorney Hagerty's representation of what she "understood" from Ms. Doe at the time she was retained.

"It is within the [C]ourt's discretion whether to award attorney's fees for a pro hac vice motion." *Harty v. Bull's Head Reatly*, 2015 WL 1064630, at * 10 (D. Conn. March 11, 2015). "As a corollary to the presumption that a reasonable, paying client would in most cases hire counsel from within his district, courts typically reduce or eliminate time billed for pro hac vice motions when Plaintiff has not persuasively demonstrated that his retention of out-of-district counsel was necessary." *Id.* In the absence of any evidence as to Ms. Doe's efforts to obtain in-state counsel, the Court declines to award attorneys' fees for time spent on *pro hac vice* motions for Plaintiffs' out-

of-state counsel.[2] *See id.* (declining to award attorneys' fees for *pro hac vice* motion where "the Court is not convinced that Plaintiff's decision to ultimately retain [out-of-state counsel] was based on the fact that no qualified counsel in the District was available or that out-of-state counsel would 'likely (not just possibly) produce a substantially better net result.'").

Similarly, "[a]s yet another corollary to the 'forum rule,' 'expenses and fees related to travel must be excluded from an award of attorney's fees if the hypothetical reasonable client who wishes to spend the least amount necessary to litigate the matter . . . would have retained local counsel.'" *Id.* at *12 (citing *U.S. ex rel Feldman v. Van Gorp*, 2011 WL 65829, at *3 (S.D.N.Y. Feb. 9, 2011); *see Friedman v. SThree PLC.*, 2017 WL 4082678, at *9 (D. Conn. Sep. 15, 2017) ("While expenditures for photocopies, postage, binding, filing, and travel are routinely recoverable, travel costs may be denied where a party chooses out-of-district attorneys." (quoting *Congreg. Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*, 188 F. Supp. 3d 333, 345 (S.D.N.Y. 2016))). "Courts have typically found that a 'reasonable, paying client would presumptively hire a firm located near the courthouse in which the litigation is to take place' because doing so 'minimizes expenses incurred as a result of an attorney's travel time.'" *Id.* (quoting *Teamsters Loc. 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 266 (E.D.N.Y. 2008)). "Thus, hours spent traveling by out-of-district attorneys into the district are not hours "reasonably expended" where competent counsel is available within the district." *Id.* (declining to award attorneys' fees for hours billed for travel to Connecticut). In keeping with the approach of other district courts and with the

---

[2] Plaintiffs appear not to seek reimbursement for costs or filing fees associated with filing Plaintiffs' counsel's *pro hac vice* motions. (*See* Hagerty Aff. ¶ 26.)

reasoning underlying *Arbor Hill*, the Court declines to award attorneys' fees for time spent traveling to and from the district by Plaintiffs' out-of-state counsel.

Defendants argue also that Plaintiffs' local counsel should not be awarded any fees except for their "fees incurred due to filing and serving documents and communications with the Court [that] needed to be performed by some attorney." (Defs.' Opp. at 33 n.44.) However, Defendants fail to identify, and the Court has not found, any caselaw suggesting that local counsel is not entitled to reimbursement for hours billed, even where a plaintiff's decision to hire out-of-state counsel was unreasonable under *Arbor Hill*. In the absence of any such authority, and given KC&S's need to comply with Local Rule 83(d)'s requirement that visiting attorneys partner with local counsel, Plaintiffs are entitled to an award of attorneys' fees for the hours billed by their local counsel.

### g. Attorney Joseph and Appellate issues

Defendants argue next that "time spent with or about Attorney Joseph and the issues he was pursuing" on appeal (totaling 5.5 hours) should not be awarded, just as Plaintiffs have indicated that they do not seek to recover fees paid to Attorney Joseph for appellate issues which were generally unsuccessful. (Defs.' Opp. at 36.)

Plaintiffs respond that "[s]ome communication between Ms. Hagerty and Lawrence Joseph was necessary for Ms. Hagerty to be informed about the impact of his efforts on the case she was handling." (Pls.' Reply at 10.) The Court agrees that 5.5 hours of communication with an attorney representing a shared client on appeal is not excessive or unreasonable, and those hours will not be deducted from the fee award.

Defendants also argue that 4.5 hours billed "pertaining to issues involving the Parent's unsuccessful appellate issues and/or 'uncovered services' . . . should have been" excluded, given

Plaintiffs' "claim that the time entries in Exhibit 1-1 . . . are for time spent on issues for which they succeeded," but were not actually excluded. Plaintiffs appear not to rebut this contention, (*see* Pls.' Reply at 10-11), and so those 4.5 hours will be reduced from the award.

### h. Communication with Ms. Doe

Finally, Defendants argue that the volume of contact between Ms. Doe and her counsel for which Plaintiffs seek reimbursement is excessive. Defendants acknowledge that the volume of contact "may have, in part, been the result of the number of years over which these proceedings have extended, and the importance to the Parent of the outcome of this case, the extent" of that contact "also clearly has been the result of the Parent's attempts to act as her own lawyer in this matter despite having counsel throughout." (Defs. Opp. at 37.)

Defendants identify several "illustrative examples" which they claim demonstrate hours billed which "were in response to legal cases [Ms. Doe] provided [her attorneys] or otherwise in response to her continued questioning of their legal analysis or filings." (*Id.* at 37 n.55.) Defendants conclude that many of the hours spent in communication with Ms. Doe were an "unnecessary effort solely caused by what was apparently an extremely difficult/demanding client, as opposed to the typical demands naturally inherent in any case." (*Id.* at 38.)

Defendants neither identify the total number of hours spent on allegedly unnecessary communication with Ms. Doe, nor explain the basis for their conclusion that the volume of communication was "unnecessary" and "caused solely" by Ms. Doe being "an extremely difficult/demanding client," nor provide any argument as to what might have been an acceptable volume of lawyer-client communication in this case.

Plaintiffs' counsel has already excluded from their award request time spent dealing with some of Ms. Doe's *pro se* filings and time spent on KC&S's motion to withdraw as counsel, two

major results of the difficulties Defendants reference. (*See* Ex. I-1 to Hagerty Aff. (Billable Hours) [Doc. # 265-6].) Plaintiffs also explain that "this is an exceptional case where the Board's gross violations of John's rights placed the burden of finding and funding his services squarely on Ms. Doe (a single parent) for too many years . . . It is no wonder that she experienced extreme stress leading to frequent contact with her attorneys." (Pls.' Reply at 10.)

In recognition of Plaintiff's counsel's exercise of judgment in limiting and reducing their own hours for which they seek reimbursement, including by omitting hours spent addressing Ms. Doe's *pro se* motions and their motion to withdraw, and in the absence of support from Defendants for their conclusion that the hours billed for communication with Ms. Doe were unnecessary or excessive, the attorneys' fees award will not be further reduced on that basis.

### ii. Hourly Rates

Attorneys' fees awards under IDEA "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). As the Supreme Court has explained,

> [t]o inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate.

*Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Plaintiffs argue that "their attorneys' rates in this matter are equivalent to or lower than the rates prevailing within the District of Connecticut for attorneys of similar skill, experience, and reputation." (Pls.' Mem. at 12.)

Ms. Hagerty and her fellow partners seek reimbursement at the rate of $375 per hour. Ms. Hagerty represents that she and other partners billed their time to Ms. Doe at $350 per hour

throughout this litigation for district court proceedings and at $375 per hour for appellate proceedings. (Hagerty Aff. ¶ 6.) KC&S billed Ms. Doe at the $350 rate "as an accommodation to Ms. Doe," (*id.*), as that was the "usual and customary rate for special education matters at the time when Ms. Doe retained" Attorney Hagerty, (Pls.' Mem. at 12).

Plaintiffs seek reimbursement for local counsel Attorney Cox at a rate of $300 per hour for substantive tasks and $150 per hour for ministerial tasks, and for local counsel Attorney Grandjean at a rate of $200 per hour for all tasks. (Pls.' Mem. at 13-14.) They seek reimbursement for the time of Attorney Moor, an associate with four to five years' experience, at $275 per hour; for Attorney Jarboe, an associate with approximately one year's experience, at $225 per hour; and for Attorney Warren, an associate with three to five years' experience, at $250 per hour. (*Id.* at 14.) Plaintiffs seek reimbursement for hours billed by law student clerks at the rate of $100 per hour and for paralegals at the rate of $75 per hour. (*Id.*)

In support of their fee request, Plaintiffs submit affidavits of attorneys Michael Perzin and Andrew Feinstein, experienced attorneys who practice special education law in Connecticut. (*See* Perzin Aff [Doc. # 267]; Feinstein Aff. [Doc. # 269].) Attorney Feinstein states that he has been in private practice for twenty-six years and that, during that time, he has become familiar with the rates charged by attorneys at other firms for special education legal work, including in the District of Connecticut and the Second Circuit. (Feinstein Aff. ¶¶ 5-6.) He is also "knowledgeable about the education, experience, and expertise" of Attorney Hagerty. (*Id.* ¶ 7.) Based on Attorney Feinstein's "experience and [his] regular contact with attorneys pursuing similar cases and billing rates that exist in the community, it is [his] opinion that the prevailing rate charged by Connecticut law firms in litigation involving appeals from administrative hearing officers' decisions to the United States District Court over the period from 2014-2017, for an attorney of Ms. Hagerty's

experience, [is] in the range of $425 to $500 per hour" and for "appeals from United States District Court decisions to the Second Circuit in special education matters" over the same period, the prevailing rate "for an attorney of Ms. Hagerty's experience[] is not less than $450 per hour." (*Id.* ¶¶ 8-9.) Attorney Feinstein also states that the prevailing rate for attorneys with 2-5 years' experience working on such cases is "not less than $300 per hour" and for law student clerks or paralegal assistance is "not less than $125 per hour."

Attorney Perzin states that he practices in New Haven, Connecticut and that since 1981, special education has been one of his major practice areas. (Perzin Aff. ¶¶ 1, 3.) He is familiar with the work that all three of Plaintiffs' firms have performed in this case and has reviewed the filings in this litigation, as evidenced by his detailed discussion of the proceedings of this case. (*Id.* ¶¶ 4-6.) Attorney Perzin is "knowledgeable with regard to Ms. Hagerty's education, experience, at expertise" and believes "that she is extremely experienced and highly qualified in the field of special education law." (*Id.* ¶ 9.) Further, he is "personally familiar with the quality of Ms. Hagerty's work in this case, having reviewed multiple motions, memoranda of law, and other materials that she prepared both in this Court and in the Second Circuit" and finds her work to be "of the highest possible caliber." (*Id.* ¶ 10.) Attorney Perzin is also familiar with the background and experience of Attorney Cox, Attorney Grandjean, and Attorneys Mercier, Moor, and Jarboe, and with the qualifications of Attorney Warren. (*Id.* ¶ 11.) Attorney Perzin is "familiar with the rates charged by attorneys at other firms for legal work on behalf of parents and students in special education and federal litigation matters, including but not limited to the litigation of special education cases in the United States District Court for the District of Connecitcut." (*Id.* ¶ 15.)

Based on his experience, Attorney Perzin believes that the

prevailing rate charged by Connecticut law firms for representation of students and parents in litigation in this Court over the period from 2014 to the present, for an attorney of Ms. Hagerty's experience and expertise, is not less than a range of $375 to $450 per hour. Based on the same factors, it is [his] own opinion that the same range applies for attorneys of Ms. Mercier's experience and expertise. [His] own rate for representation of students and parents in special education matters is $375 per hour.

(*Id.* ¶ 16.) Attorney Feinstein also opines that "the prevailing rate charged by Connecticut law firms for general civil litigation work as local counsel in United States District Court actions over the period from 2011-2014, for an attorney of Mr. Grandjean's experience, is not less than a range of $350 to $450 per hour." (*Id.* ¶ 17.) He states further that it is his

opinion that the prevailing rate charged by Connecticut law firms for the time of associate attorneys in special education litigation on behalf of parents and students in federal district court over the period from 2011- 2014 is not less than a range of $250 to $300 per hour for attorneys with 2-5 years' experience and not less than $200 to $250 per hour for attorneys with 0-2 years' experience. Based on the same factors, it is my opinion that the prevailing rate changed by Connecticut law firms for the time of law student clerks or paralegal assistants in civil litigation matters over the same period is not less than $100 to $150 per hour.

(*Id.* ¶ 18.) The rates sought by Plaintiffs' counsel in this matter are therefore clearly supported by these affidavits, which suggest that all such rates are beneath or at the lower end of the range of rates charged by comparable attorneys for comparable services in Connecticut.

Defendants argue nonetheless that the rates sought by each of Plaintiffs' counsel are unreasonable. (Defs.' Opp. at 18.) First, Defendants argue that it is unreasonable for Attorney Hagerty to seek reimbursement at a rate of $375 because she only charged Ms. Doe at a rate of $350. But this Court has discretion to award fees at prevailing rates, rather than historic rates, *see Ladd v. Thomas,* 47 F. Supp. 2d 236, 239 (D. Conn. 1999), especially in light of the "[i]mportant public policy considerations [which] dictate that we should not punish an 'under-charging' civil

rights attorney," *Reiter v. MTA New York City Transit Auth.*, 457 F.3d 224, 233 (2d Cir. 2006) (internal citation omitted). Therefore, given the affidavits of Attorneys Feinstein and Perzin, and in the absence of any other persuasive argument[3] by Defendants suggesting that the $375 hourly rate sought by Attorney Hagerty and her fellow partners is excessive, the Court will award those attorneys reimbursement at that rate.

Defendants also argue that "in view of the $300 rate granted for the" attorney in *M.A.* who was "much more experienced" than Attorneys Moor, Jarboc, and Warren, for whom Plaintiffs seek reimbursement at hourly rates of $275, $225, and $250, those requested rates are "clearly excessive." (Defs.' Opp. at 21.) But given the affidavits of Attorneys Feinstein and Perzin, both of whom have no affiliation to this case or any of its attorneys, which confirm that the rates sought for KC&S associates are within or below the market range for attorneys with similar experience in Connecticut, the Court declines to reduce those rates.

Finally, Defendants argue that the "excessive and unreasonable nature of the rates" charged by Plaintiffs' counsel at KC&S is "best illustrated by the rates for which other attorneys who have worked on this matter have charged." (Defs.' Opp. at 22.) First, Defendants analogize to Attorney Cox, who charged $300 per hour for substantive tasks in this case, and to Attorney Cox, who billed at the rate of $200 per hour in this case. (*Id.*) Next, Defendants analogize to the "various attorneys who have worked for the Board in defense of this matter," whose hourly rates ranged from $120

---

[3] Defendants argue that the $375 rate is excessive in light of *M.A. v. Torrington Bd. of Ed.*, 980 F. Supp. 2d 279 (D. Conn. 2014), in which Judge Margolis found that an hourly rate of $350 was excessive and instead awarded fees at an hourly rate of $300. But the attorneys in *M.A.* had experience which "include[d] only three other federal court matters." 980 F. Supp. 2d at 296. Given the disparity in experience between Attorney Hagerty and the attorneys at issue in *M.A.*, the Court finds Defendants' analogy to that case unpersuasive.

per hour to $275 per hour. (*See* Ex. 1 to Defs.' Opp. (Aff. of Shel D. Myers) [Doc. # 272-1] ¶ 3.) Defendants argue that their counsel had comparable or greater experience than Plaintiffs' counsel, and yet billed at lower rates than did Plaintiffs' counsel, and therefore conclude that those lower rates "more closely demonstrate and define what is reasonable in this case." (Defs.' Opp. at 24.)

Attorney Myers does not claim that the rates sought by Plaintiffs' counsel are not within the market range for plaintiffs' lawyers in special education cases in Connecticut. (*See generally* Myers Aff.) Defendants do not submit any affidavit by an attorney not affiliated with this case to suggest that the rates sought by Plaintiffs' counsel are not within the market range. In the absence of any such claims, and given the different considerations involved between representing plaintiffs and school boards, the Court declines to reduce the award to Plaintiffs' counsel based on Defendants' comparisons. *See C.G. v. New Haven Bd. of Ed.*, 988 F. Supp. 60, 68-69 (D. Conn 1997) (rejecting argument that plaintiff's counsel's fees should mirror fees of attorneys who "represent boards of education, not plaintiffs, in" special education cases, where defendants did not offer any attorney's affidavit claiming familiarity with "the rates charged by attorneys representing plaintiffs in special education cases" or the "market rate for an attorney with . . . experience and expertise" comparable to plaintiff's counsel in special education cases). Plaintiffs' counsel will be awarded attorneys' fees at the rates sought in their motion.

### iii. Costs

Plaintiffs also seek an award of costs totaling $1,417.46 for costs incurred in the district court through October 31, 2017. (Pls.' Mem. at 15.) These costs are for photocopying the administrative record, trial transcripts, and filing and service fees. (*Id.*) Plaintiffs have excluded costs already reimbursed by the Board, and certain other costs incurred by KC&S, from their

request. (*Id.*) Defendants appear not to dispute these costs. The Court finds them reasonable and will award costs as requested.

### III.    Conclusion

For the reasons set forth above, Plaintiffs' Second Motion for Attorneys' Fees and Costs [Doc. # 263] is GRANTED as modified. Plaintiffs are directed to submit to the Court within ten days of this Ruling an updated award calculation which reflects the modifications ordered herein.[4]

IT IS SO ORDERED,

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 27th day of March 2019.

---

[4] These modifications include: a 25% reduction in hours billed by law students; a 20% reduction in the hours spent preparing attorneys' fees motions; a 20% reduction in hours billed by partners at KC&S (excluding Attorney Hagerty); no fees awarded for hours spent on *pro hac vice* motions or traveling to and from the district; and removal of 4.5 hours billed for unsuccessful appellate issues.